## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SECULAR STUDENT ALLIANCE,
980 S Arroyo Parkway, Suite 270
Pasadena, CA 91105,

     and

DECLAN A. GALLI,
154 Canyon Circle
San Luis Obispo, CA 93410,

               Plaintiffs,

    v.

U.S. DEPARTMENT OF EDUCATION,
400 Maryland Ave., SW
Washington, DC 20202,

     and

SECRETARY OF EDUCATION,
400 Maryland Ave., SW
Washington, DC 20202,

              Defendants.

**COMPLAINT**

Case No.

### INTRODUCTION

1.    Colleges and universities have a critical interest in creating inclusive, welcoming places of learning. Nondiscrimination requirements serve that end, and they help to secure equal and full access to educational opportunities for all students. For these reasons, many colleges and universities proudly implement nondiscrimination requirements to create a positive and inclusive school climate for everyone. And the institutions and their students are better off for it.

1

2.      Sadly, the U.S. Department of Education and its former Secretary, Betsy DeVos, apparently disagree with those aims. They enacted a new Rule (85 Fed. Reg. 59,916 (Sep. 23, 2020)) that prohibits public colleges and universities from applying most if not all nondiscrimination policies to religious student organizations, on pain of losing federal funding.

3.      Under the guise of enforcing the First Amendment, the Rule bars public colleges and universities from requiring religious student organizations to comply with nondiscrimination requirements, including university rules and state laws specifying that university-recognized, university-funded student organizations may not bar students from club membership or leadership on the basis of characteristics such as race, religion, sex, sexual orientation, gender identity, disability status, or status as a veteran.

4.      But Congress has never delegated to the Secretary *any* power to enforce the First Amendment. And it certainly has not given the Secretary the power to deprive public colleges and universities of federal funding unless they comply with the Secretary's incorrect interpretation of the constitutional requirements. The Department knows that: Time and again, it has expressly recognized that it has no authority to enforce the First Amendment.

5.      On this basis alone, the Rule is invalid and must be set aside.

6.      If that weren't enough, the Supreme Court has recognized that public colleges and universities are entitled to protect against discrimination by campus groups—and that they have many good reasons to do so. Religious student clubs have

no constitutional right, the Supreme Court has held, to demand recognition as an official university club and to receive the university funding that goes along with it, when they do not comply with their university's nondiscrimination policies. The Supreme Court has also held that when public colleges and universities make resources available to student organizations, they cannot grant preferential access to those resources based on whether the clubs are religious or express a religious viewpoint. In other words, the Court has held that the First Amendment does not even *allow* the exemptions that the Department insists that the Amendment *requires*.

7.     Yet because of the new Rule, many public colleges and universities must now scrap the nondiscrimination requirements that they put in place to protect all students. These schools now have no real choice but to recognize and fund religious student organizations that discriminate—with disastrous results for students from groups that have historically been victims of invidious discrimination. For that is what the Secretary of Education has mandated.

8.     And because colleges' funding for student groups typically comes out of fees that all students are required to pay, the students themselves must now subsidize organizations that discriminate—including organizations that would discriminate against those very students—when their universities otherwise would have ensured just the opposite. That is not good for the universities or the students, for whom equal treatment and a welcoming campus environment are critical to ensuring that all students can take full advantage of the educational opportunities before them.

9.     Fortunately for the students and universities alike, the Department of Education has no authority to impose these draconian new requirements. Plaintiffs therefore ask this Court to invalidate the portions of the Rule that unlawfully constrain the ability of public colleges and universities to apply their nondiscrimination requirements uniformly to all student groups.

## JURISDICTION AND VENUE

10.     This action arises under the Administrative Procedure Act, 5 U.S.C. §§ 553, 701-706, and the United States Constitution.

11.     This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1346.

12.     The Rule is a "final agency action" and thus is reviewable under the APA. 5 U.S.C. § 704.

13.     This Court has authority to issue declaratory and injunctive relief under 28 U.S.C. §§ 2201-2202, and to vacate and set the Rule aside under 5 U.S.C. §§ 702 and 706.

14.     This case is a civil action in which Defendants are an agency and officer of the United States. They reside in this District, and a substantial part of the events giving rise to this action occurred here. Venue is therefore proper in this Court. *See* 28 U.S.C. § 1391(e)(1).

## THE PARTIES

**Plaintiffs**

15.    Plaintiff Secular Student Alliance is a nonprofit organization dedicated to advancing nonreligious viewpoints in public discourse.

16.    SSA has chapters and affiliates at colleges and universities, which it supports by providing them with resources, including minimum standards, sample bylaws, tabling materials, supplies, and mentoring.

17.    SSA and its chapters and affiliates welcome all individuals regardless of their identity or religious affiliation, and they and their members value the efforts of colleges and universities to ensure inclusive and welcoming campuses through uniform application of nondiscrimination policies to all recognized student organizations.

18.    SSA's campus chapters and affiliates are nonreligious organizations that, in accordance with the national organization's standards, do not require student members to adhere to any particular set of beliefs.

19.    Among the campuses where SSA has chapters, affiliates, and members are Oregon State University and the University of West Florida.

20.    Oregon State and the University of West Florida are public universities that receive direct or state-administered grants of federal funds from the Department of Education, making them subject to the challenged Rule.

21.    Students at Oregon State, including members of the SSA affiliate there, are required to pay mandatory "Incidental Fees" that go to provide official university funding for recognized student organizations.

22.    Oregon State requires all recognized student organizations, including SSA's affiliate, to comply with a general nondiscrimination policy to be eligible to receive university funding and other benefits. This nondiscrimination policy applies regardless of a clubs' viewpoint, religious or otherwise. The policy provides that:

> No institution or division shall recognize, register or otherwise provide assistance to any organization that discriminates in its membership on the basis of age, disability, national origin, race, marital status, religion, sex or sexual orientation, except that institutions or divisions may provide assistance to organizations exempted under Title IX of the Educational Amendments of 1972 from discriminating on the basis of sex in their membership policies.[1]

23.    Students at the University of West Florida, including SSA members there, are required to pay mandatory "Activity and Service Fees" that go to provide official university funding and other benefits for recognized student organizations.

24.    The University of West Florida requires all recognized student organizations to comply with a general nondiscrimination policy to be eligible to receive university funding. This nondiscrimination policy applies regardless of the clubs' viewpoint, religious or otherwise. The policy provides that:

> Membership of student organizations is open to all regardless of age, color, disability, gender, gender identity, sex, sexual orientation, marital status, national origin, race, religion and veteran status.[2]

25.    Plaintiff Declan A. Galli is a resident of San Luis Obispo, California, and a full-time student at California Polytechnic State University. In addition to his

---

[1] *See* Oregon State University, *Discrimination: Assistance to Organizations*, https://bit.ly/3qq3jkJ

[2] *See* University of West Florida, *Student Organizations: Discrimination Policy*, https://bit.ly/3oJV5n3

studies, he works as a Student Assistant at Cal Poly's Department of Student Diversity and Belonging; performs in the PolyPhonics, a student performance group within the Cal Poly Music Department; and participates in university-recognized student organizations, including the Transgender & Queer Student Union.

26.   Like all students at Cal Poly, Declan is required to pay an "Associated Student Fee" each term. Recognized student organizations receive funding from these fees.

27.   Cal Poly requires all recognized student organizations to comply with a general nondiscrimination policy to be eligible to receive university funding and other benefits. This nondiscrimination policy applies regardless of the clubs' viewpoint, religious or otherwise. The policy provides that recognized student organizations:

> shall not discriminate on the basis of race, religion, political affiliation, national origin, ethnicity, color, age, gender, gender identity, marital status, citizenship, sexual orientation, or disability.[3]

28.   Declan is gay, Episcopalian, and of Latinx decent. He knows of incidents of anti-LGBTQ discrimination by students and others on campus, and he values Cal Poly's efforts to foster an inclusive, welcoming educational environment. These efforts include the university's commitment to its existing nondiscrimination policy, which allows Declan to participate fully in campus life and protects him from being forced to fund recognized student organizations that would otherwise discriminate against him based on these or other protected characteristics.

---

[3] *See* California Polytechnic State University, *Campus Administrative Policies: Chapter 600 Student Affairs* § 620.2, https://bit.ly/3nK4gm1

29.     Because of the Department's new Rule, public colleges and universities, including Oregon State, the University of West Florida, and Cal Poly, are now required to exempt religious student clubs from nondiscrimination policies that would otherwise apply to all student clubs.

30.     Whether colleges and universities with nondiscrimination policies exempt religious student groups while requiring other student groups to comply, or instead ultimately change or rescind their general nondiscrimination policies to comply with the Department's requirements for religious student clubs by exempting *all* student organizations from nondiscrimination requirements, Declan and the student members of SSA and its chapters and affiliates will be forced to pay, through their universities' collection and disbursement of mandatory student fees, to subsidize the religious student organizations that discriminate in their membership or leadership—including organizations that specifically exclude these fee-paying students based on protected characteristics or membership in protected classes.

31.     Should any public colleges and universities remain committed to preserving a positive educational environment for all their students by retaining and applying their nondiscrimination policies uniformly across campus, they must defy the Department of Education's mandates and as a result forgo federal funding. They would then lose access to critical resources, at a time when university budgets have already been devastated by the COVID-19 pandemic. As a result, educational opportunities that would have been available to their students, including Declan and SSA's members, would be degraded or lost entirely.

32.   In other words, whether these universities comply with the Department's new Rule or not, the Rule will inflict significant harms on the students.

Defendants

33.   The U.S. Department of Education is an executive agency of the United States under 5 U.S.C. § 101 and a federal agency within the meaning of 28 U.S.C. § 2671. As such, it engages in agency action and is named as a defendant under 5 U.S.C. § 702 and the Constitution. Its principal address is 400 Maryland Ave., S.W., Washington, DC 20202.

34.   The Secretary of Education is an officer of the United States who is responsible for carrying out the duties of the Department of Education under the Constitution and federal law. Mitchell Zais is Acting Secretary of Education, having been named to that position on January 8, 2021, following the resignation of former Secretary Betsy DeVos. The Secretary, and hence the Acting Secretary, is an official-capacity defendant.

## GENERAL ALLEGATIONS

### Statutory Background

35.   The Department of Education provides federal financial assistance to colleges and universities through, among other funding streams, its Direct Grant Programs (*see* 34 C.F.R. § 75.1, *et seq.*) and State-Administered Programs (*see* 34 C.F.R. § 76.1, *et seq.*).

36.   As the executive agency that operates these programs and administers the disbursement of congressionally appropriated federal funds through them, the Department has received specific delegations from Congress to implement a variety

of federal statutes, including being delegated regulatory authority to enforce certain federal civil-rights laws that bar federally funded discrimination against members of protected classes.

37.    Specifically, Congress has delegated to the Secretary the authority to enforce against colleges and universities, by withholding federal financial assistance, the statutory prohibitions against federally funded discrimination on the basis of race, ethnicity, and national origin (*see* 42 U.S.C. §§ 2000d, 2000d-1), sex (*see* 20 U.S.C. §§ 1681–82), disability (*see* 29 U.S.C. § 794(a); 42 U.S.C. § 12132–34; 28 C.F.R. § 35.190(b)(2)), and age (*see* 42 U.S.C. §§ 6102, 6103(a)).

38.    The Department has officially recognized on multiple occasions that no statute or delegation confers on it any authority to enforce the First Amendment.[4]

**Notice of Proposed Rulemaking**

39.    On March 21, 2019, President Donald Trump signed Executive Order No. 13,864, 84 Fed. Reg. 11401 (2019). The Order, entitled Improving Free Inquiry, Transparency, and Accountability at Colleges and Universities, directed the Secretary of Education to "foster . . . compliance with the First Amendment" by "ensur[ing that] institutions that receive Federal research or education grants . . . compl[y] with all applicable Federal laws, regulations, and policies." *Id.* at 11,401–02.

---

[4] *See, e.g.*, OCR, Case Processing Manual, § 109 (Aug. 26, 2020); Dear Colleague Letter (October 26, 2010), at 2 n.7, https://bit.ly/3nmteI5; Dear Colleague Letter: Title VI and Title IX Religious Discrimination in Schools and Colleges (Sept. 13, 2004), http://bit.ly/2XifJ1E

40.   On January 17, 2020, the Department issued a Notice of Proposed Rulemaking entitled Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards, Direct Grant Programs, State-Administered Formula Grant Programs, Developing Hispanic-Serving Institutions Program, and Strengthening Institutions Program. See 85 Fed. Reg. 3190 (Jan. 17, 2020).

41.   That NPRM stated in its "Summary of Proposed Changes" that the proposed new rule would, among other things, "require grantees that are public institutions . . . to treat religious student organizations the same as secular student organizations." *Id.* at 3200.

42.   Yet the NPRM proposed adding subsection (d) to 34 C.F.R. §§ 75.500 and 76.500, to require public colleges and universities to *favor and give preferential treatment to* religious student organizations, by forbidding the colleges and universities to deny to those groups "any right, benefit, or privilege that is otherwise afforded to other student organizations" based on the religious student organizations' "membership standards" or "leadership standards"—even if the university is merely applying a general nondiscrimination policy that is applicable to all student organizations. *Id.* at 3223, 3226.

43.   As a result, religious student organizations would not be required to comply with nondiscrimination policies that prevent university-recognized, university-funded organizations from discriminating against prospective student members or candidates for club offices on the basis of protected characteristics such as race, sex, religion, sexual orientation, or gender identity.

44.    In the truncated 30-day period that the Department allowed for public comment, more than 17,000 comments were submitted.

45.    A number of commenters opposed the proposed rule because the Department lacked statutory authority to promulgate it. They pointed out that the statutes that the Department had identified as the sources of rulemaking authority—20 U.S.C. § 1221e-3 and 20 U.S.C. § 3474—provide no authority to enact the proposed rule.

46.    Multiple commenters opposed the proposed rule because it failed to consider the harms that this new exemption of religious student organizations from university nondiscrimination requirements "would pose for students who would face discrimination by school-sanctioned student groups." 85 Fed. Reg. 59,940–41. For example, the ACLU stressed the "long history of student groups serving as vehicles for discrimination, preventing marginalized students from being fully integrated into student life on university campuses across the country." And Americans United for Separation of Church and State explained that "universities have a legitimate interest in preventing discrimination on campus and fostering inclusionary practices for student organizations."

47.    Commenters also opposed the proposed rule because it would give religious student groups preferential treatment, not the equal treatment that the Department said that it wished to provide. American Atheists, for example, explained that "student organizations at public colleges and universities constitute a public forum," so these institutions "may not discriminate based on viewpoint, nor may they favor some viewpoints, such as by granting special exemptions only to religious

organizations." And Americans United for Separation of Church and State explained that "[i]nstead of treating all groups equally, this proposed rule would treat religious student groups specially."

48.    Additionally, commenters opposed the proposed rule based on a conflict between the Department's view of the First Amendment's requirements and the Supreme Court's decision in *Christian Legal Society v. Martinez*, which expressly rejected a First Amendment challenge by a religious student organization to a public law school's "all-comers policy." Under that policy, the law school required that all student groups that wished to receive official status, recognition, and funding must "allow any student to participate, become a member, or seek leadership positions in the organization, regardless of her status or beliefs." 561 U.S. 661, 671 (2010). The ACLU, for example, pointed out that the Rule would "mandate the very same preferential treatment for religious student organizations that the Supreme Court held was not necessary" in *CLS*.

**The Final Rule**

49.    On September 23, 2020, the Department published its final Rule, entitled Direct Grant Programs, State Administered Formula Grant Programs, Non Discrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance, Developing Hispanic Serving Institutions Program, Strengthening Institutions Program, Strengthening Historically Black Colleges and Universities Program, and Strengthening Historically Black Graduate Institutions Program. 85 Fed. Reg. 59,916 (Sept. 23, 2020).

50.    The Rule became effective sixty days later, on November 23, 2020.

51.   The Rule amends federal regulations contained in 2 C.F.R. Part 3474 and 34 C.F.R. Parts 75, 76, 106, and 606-09.

52.   The portions of the Rule being challenged here are those that add a new subsection (d) to 34 C.F.R. §§ 75.500 and 76.500, as had been proposed in the NPRM. These new provisions, according to the Department's description, "require grantees that are public institutions to treat religious student organizations the same as secular student organizations." 85 Fed. Reg. 3,200 (Jan. 17, 2020). But as with the NPRM, they in fact require preferential treatment for those organizations.

53.   Part 75 of title 34 of the Code of Federal Regulations governs the Department's Direct Grant Programs. Part 76 of title 34 of the Code governs the Department's State-Administered Programs.

54.   Section 75.500 identifies the provisions of federal antidiscrimination laws and regulations with which recipients of direct grants must comply as a condition of receiving the grant funds, and Section 76.500 does the same thing for recipients of federal funds under the Department's state-administered programs.

55.   The Rule amends Section 75.500 to impose several new requirements on recipients of direct grants. The newly added Subparagraph (d) provides:

> As a material condition of the Department's grant, each grantee that is a public institution shall not deny to any student organization whose stated mission is religious in nature and that is at the public institution any right, benefit, or privilege that is otherwise afforded to other student organizations at the public institution (including but not limited to full access to the facilities of the public institution, distribution of student fee funds, and official recognition of the student organization by the public institution) because of the religious student organization's beliefs,

practices, policies, speech, membership standards, or leadership standards, which are informed by sincerely held religious beliefs.[5]

56.     Section § 76.500(d) does the same thing for recipients of federal funds through the Department's state-administered grants, making the new mandates applicable to "each State or subgrantee that is a public institution."

57.     The Department cites only 20 U.S.C. § 1221e-3 and 20 U.S.C. § 3474 as its statutory authority for the Rule.[6]

58.     The Rule also references Executive Order 13831 and the First Amendment.[7]

59.     Section 1221e-3 is a statute that authorizes the Secretary of Education to promulgate regulations governing the programs administered by the Department to "carry out functions otherwise vested in the Secretary by law or by delegation of authority pursuant to law, and subject to limitations as may be otherwise imposed by law."

60.     Section 3474 is a statute that authorizes the Secretary "to prescribe such rules and regulations as the Secretary determines necessary or appropriate to administer and manage the functions of the Secretary or the Department."

61.     In response to comments on the NPRM, the final Rule's preamble "emphasizes that §§ 75.500(d) and 76.500(d) are consistent with the [Supreme Court's] holding in *CLS* [*v. Martinez*], as these regulations do not prohibit public colleges and universities from implementing all-comers policies." 85 F.R. at 59,939.

---

[5] 85 Fed. Reg. 59,978–80.

[6] *See* 85 Fed. Reg. 59,978–79.

[7] *See* 85 Fed. Reg. 59,916, 59,974.

62.   Yet nothing in the actual text of the newly added 34 CFR §§ 75.500(d) and 76.500(d) provides that all-comers policies may continue to be enforced against religious student organizations. And the provisions bar application to those groups of other university nondiscrimination requirements.

63.   To enforce the new provisions, the Department has created an e-mail address through which "[a]nyone may report an alleged violation of 34 CFR § 75.500(d) and 34 CFR 76.500(d) to the Department," whether or not the person or entity making the report is affected by the alleged violation. *See Notice of Reporting Process*, 85 Fed. Reg. 75,311 (Nov. 25, 2020).

64.   According to the Rule's preamble, the Department will determine through an investigation "whether other student organizations indeed received the right, benefit, or privilege that the religious student organization was allegedly denied because of the religious student organization's beliefs, practices, policies, speech, membership standards, or leadership standards, which are informed by sincerely held religious beliefs." *See* 85 Fed. Reg. 59,945.

65.   In other words, the new regulatory provisions assert agency authority and discretion to enforce grantees' compliance with the Rule, and hence with the Secretary's view of the First Amendment's requirements with respect to religious student organizations.

66.   Applicants for Department-administered grants (other than construction grants) must certify that they will "comply with all applicable requirements of all . . . regulations and policies governing this program." Thus, public colleges and

universities that have not altered or rescinded their nondiscrimination policies or exempted religious student groups from those policies are not just subject to enforcement actions but also are ineligible to apply for new grants.

## CAUSES OF ACTION

### Count I: *Ultra Vires* Agency Action

67.   Plaintiffs incorporate the previous paragraphs as if fully set forth here.

68.   An "agency literally has no power to act . . . unless and until Congress confers power upon it." *La. Pub. Serv. Comm'n v. F.C.C.*, 476 U.S. 355, 374 (1986).

69.   When an agency's actions exceed the powers conferred by Congress, those actions are *ultra vires*, and courts have "inherent power . . . 'to reestablish the limits on [executive] authority' through judicial review." *Adamski v. McHugh*, 304 F. Supp 3d 227, 237 (D.D.C. 2015) (quoting *Dart v. United States*, 848 F.2d 217, 224 (D.C. Cir. 1988)) (alteration in original).

70.   Congress has not delegated to the Secretary or Department of Education any authority to interpret or enforce grant recipients' compliance with the First Amendment or to impose or enforce on grant recipients any other requirements respecting free speech, religion, or religious discrimination.

71.   The Rule's additions of subsection (d) to 34 C.F.R. § 75.500 and 34 C.F.R. § 76.500 exceed the Department's delegated authority and constitute *ultra vires* agency action.

72.   Absent declaratory and injunctive relief invalidating and barring enforcement of the challenged provisions (or else vacatur on the APA causes of action), Plaintiffs will be harmed by Defendants' unlawful actions.

17

### Count II: Violation of Administrative Procedure Act, 5 U.S.C. § 706(2)(C)
### Excess of Statutory Authority and Jurisdiction

73.    Plaintiffs incorporate the previous paragraphs as if fully set forth here.

74.    The APA requires that a court hold unlawful and set aside any agency action that is in excess of the agency's statutory jurisdiction, authority, or limitations. 5 U.S.C. § 706(2)(C).

75.    The Department must affirmatively demonstrate its statutory authority by identifying in its rules specific statutory authorization for each agency action. 5 U.S.C. § 553(b)(2).

76.    The statutory provisions that a rule cites are the only ones on which the Department may then rely to establish that regulatory authority if the rule is challenged. *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 50 (1983).

77.    The Department has received no delegation of authority, whether by statute or otherwise, to interpret or enforce grant recipients' compliance with the First Amendment—or any other requirements respecting free speech, religion, or religious discrimination.

78.    The Executive Order and the two statutes that the Department identifies in the Rule as its sources of regulatory authority for 34 C.F.R. §§ 75.500(d) and 76.500(d) (*see* 85 Fed. Reg. 59,979-80 (Jan. 17, 2020)) do not authorize or delegate lawful authority for the challenged requirements, and hence they also do not satisfy the Department's express duty under the APA to identify with particularity the valid statutory authority that the Secretary is invoking when making rules.

79.   Accordingly, the Rule's additions of subsection (d) to 34 C.F.R. § 75.500 and 34 C.F.R. § 76.500 exceed the Department's statutory authority and jurisdiction and thus violate 5 U.S.C. § 706(2)(C).

80.   Absent vacatur and setting aside of the of the challenged provisions (or invalidation and injunction against enforcement under the *ultra vires* and direct First Amendment causes of action), Plaintiffs will be harmed by Defendants' unlawful actions.

### Count III: Violation of First Amendment and Administrative Procedure Act, 5 USC § 706(2)(A), (B) Contrary to Law, Arbitrary and Capricious, and Unconstitutional

81.   Plaintiffs incorporate the previous paragraphs as if fully set forth here.

82.   The APA requires that a court hold unlawful and set aside any agency action found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A).

83.   The APA also requires that a court hold unlawful and set aside any agency action found to be "contrary to constitutional right, power, privilege, or immunity." 5 USC § 706(2)(B).

84.   By prohibiting grantees from denying "to any student organization whose stated mission is religious" any right or benefit based on any "practices, policies . . . membership standards, or leadership standards, which are informed by sincerely held religious beliefs," the Rule prohibits, on asserted First Amendment grounds, the enforcement of a range of nondiscrimination policies that bar official student organizations from excluding members or leaders on the basis of protected categories such as race, religion, sex, sexual orientation, gender identity, or status as a veteran.

85.   In *Christian Legal Society*, 561 U.S. at 667, the Supreme Court held that the First Amendment does not confer a right on religious student groups to be exempt from a public educational institution's nondiscrimination policy and yet be officially recognized and funded by that institution.

86.   The Rule's interpretation and implementation of the First Amendment are contrary to *CLS* and hence the Rule is unlawful and the Secretary's imposition of it is arbitrary and capricious.

87.   To the extent that the Rule bars the enforcement of all-comers policies like the one in *CLS* against religious student groups, the Rule is contrary to *CLS* and hence the Rule is unconstitutional and unlawful.

88.   To the extent that the Department allows public colleges and universities to enforce all-comers policies but not other nondiscrimination requirements against religious student groups, the Department incorrectly and arbitrarily and capriciously interprets and applies the First Amendment and *CLS*.

89.   The Department also arbitrarily and capriciously failed to respond to public comments and to justify or adequately explain any differential treatment that the Rule may mandate for all-comers and other nondiscrimination policies, when all are intended to, and do, prohibit official student groups from discriminating in club membership or leadership based on students' membership in protected classes.

90.   Additionally, the Rule purports to implement the protections of the Free Exercise Clause by mandating religious exemptions from general requirements, when the exemptions will license, require, and result in discrimination against

students on the basis of protected characteristics and cause substantial harm to students and their colleges and universities. But the Free Exercise Clause does not require, nor does the First Amendment even allow, religious exemptions from general requirements by a public institution when the exemptions would materially harm third parties.

91.    The Rule violates the First Amendment and long-standing Supreme Court precedent by affording preferential exemptions from nondiscrimination requirements to religious student clubs that impose material harms on other students and their universities, making the nonbeneficiaries pay and bear costs to subsidize the favored student groups' religion.

92.    Moreover, under Supreme Court precedent, there is no First Amendment right to an exemption from otherwise-valid nondiscrimination requirements.[8]

93.    The Rule's additions of subsection (d) to 34 C.F.R. § 75.500 and 34 C.F.R. § 76.500 are contrary to law, unconstitutional, and arbitrary and capricious, violating 5 U.S.C. § 706(2)(A) and (B), because the challenged provisions recognize and impose purported constitutional requirements that the Supreme Court has held do not exist.

94.    Furthermore, when a public college or university recognizes and provides official funding to student organizations, it creates a limited public forum.[9]

---

[8] *See, e.g.*, *New York State Club Ass'n v. City of New York*, 487 U.S. 1, 13–14 (1988).

[9] *See, e.g.*, *CLS*, 561 U.S. at 679 n.12; *Bd. of Regents, Univ. of Wis. Sys. v. Southworth*, 529 U.S. 217, 229-230 (2000); *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829–30 (1995).

95.    The Free Speech Clause of the First Amendment requires that any restrictions imposed on access to a limited public forum must be viewpoint-neutral.[10]

96.    The Establishment Clause of the First Amendment forbids government to favor one religion over another or religion over nonreligion.[11]

97.    By mandating that the requirements for access to a limited public forum that apply to nonreligious student organizations cannot be applied equally to religious student organizations, the Rule impermissibly grants "preferential, not equal, treatment" to organizations with a religious viewpoint, violating the First Amendment and long-standing, settled Supreme Court precedent.[12]

98.    The challenged provisions are thus unconstitutional, unlawful, and arbitrary and capricious, violating 5 U.S.C. § 706(2)(A) and (B).

99.    Absent vacatur and setting aside of the challenged provisions, or else declaratory and injunctive relief barring their application and enforcement under the *ultra vires* count and the direct First Amendment causes of action in this Count, Plaintiffs will be harmed by Defendants' unlawful actions.

### Count IV: Violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A) Arbitrary and Capricious

100.   Plaintiffs incorporate the previous paragraphs as if fully set forth here.

---

[10] *See, e.g.*, *CLS*, 561 U.S. at 679; *Southworth*, 529 U.S. at 233-234; *Rosenberger*, 515 U.S. at 829–30.

[11] *See, e.g.*, *Larson v. Valente*, 456 U.S. 228 (1982).

[12] *CLS*, 561 U.S. at 697 n.27.

101.   The APA requires that a court hold unlawful and set aside any agency action found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A).

102.   The Rule's additions of subsection (d) to 34 C.F.R. § 75.500 and 34 C.F.R. § 76.500 are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law because the Department failed adequately to consider important aspects of the issue and to give due consideration to public comments, including with respect to:

   a.   The harms to students, especially those from historically disadvantaged groups, who will now be excluded from student organizations at their public colleges and universities by operation of the Rule.

   b.   The harms to students who, by operation of the Rule, will have the student activity fees that they are required to pay be used to subsidize and provide financial support to student organizations that, on the basis of protected characteristics, exclude those fee-paying students from the activities paid for with their fees.

   c.   The deleterious effects on the educational environment and campus culture at public colleges and universities, and the ensuing harms to students, caused by legally mandated university support for invidious discrimination that otherwise would not have been sanctioned under the schools' nondiscrimination policies.

    d.  The effects of the Rule on nonreligious student organizations and their members, whose First Amendment rights will be violated by the denial of viewpoint-neutral access to a limited public forum and the affording of preferential access to religious groups.

103.  The Rule is not the product of reasoned decision-making. In adopting it, the Department failed to respond adequately to public comments and failed to consider important aspects of the problem.

104.  The challenged provisions are arbitrary and capricious and therefore violate 5 U.S.C. § 706(2)(A).

105.  Absent vacatur and setting aside of the challenged provisions (or else declaratory and injunctive relief barring application and enforcement under the *ultra vires* and unconstitutionality causes of action), Plaintiffs will be harmed by Defendants' unlawful actions.

## PRAYER FOR RELIEF

106.  Plaintiffs respectfully request that this Court enter judgment in their favor and grant the following relief:

    a.  Declare that the Rule's additions of subsection (d) to 34 C.F.R. § 75.500 and 34 C.F.R. § 76.500 were *ultra vires* and unconstitutional.

    b.  Declare that the challenged provisions of the Rule violate the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), (B), and (C).

    c.  Vacate and set aside the challenged provisions under 5 U.S.C. § 706(2).

d.  Issue an injunction barring enforcement of the *ultra vires* and unconstitutional provisions of the Rule.

e.  Award Plaintiffs reasonable costs and expenses, including attorneys' fees for this action, under the Equal Access to Justice Act, 28 U.S.C. § 2412, and any other applicable provisions of law or powers of the Court.

f.  Grant any other relief that the Court deems just or proper.

Respectfully submitted,

s/ *Richard B. Katskee*

Richard B. Katskee (D.C. Bar. No. 474250)
Bradley Girard (D.C. Bar. No. 1033743)
Alexander Gouzoules*
(D.C. Bar. No. 1697217)
AMERICANS UNITED FOR SEPARATION OF
    CHURCH AND STATE
1310 L Street NW, Suite 200
Washington, DC 20005
Tel: (202) 466-3234
Fax: (202) 466-3353
*katskee@au.org*

Alison M. Gill* (D.C. Bar No. 499620)
AMERICAN ATHEISTS LEGAL CENTER
1100 15th St. NW, Fourth Floor
Washington, D.C. 20005

Geoffrey T. Blackwell
(D.D.C. Bar No. NJ029)
AMERICAN ATHEISTS LEGAL CENTER
1201 S. Courthouse Rd. #425
Arlington, VA 22204†

*Counsel for Plaintiffs*

Date: January 19, 2021

---

* Application to the U.S. District Court for the District of Columbia pending.

† Address change via ECF/PACER pending.