**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SECULAR STUDENT ALLIANCE,<br>980 S. Arroyo Parkway, Suite 270<br>Pasadena, CA 91105,<br><br>and<br><br>DECLAN A. GALLI,<br>154 Canyon Circle<br>San Luis Obispo, CA 93410,<br><br>       *Plaintiffs*,<br><br>    v.<br><br>U.S. DEPARTMENT OF EDUCATION,<br>400 Maryland Ave., SW<br>Washington, DC 20202,<br><br>and<br><br>SECRETARY OF EDUCATION,<br>400 Maryland Ave., SW<br>Washington, DC 20202<br><br>       *Defendants*,<br><br>RATIO CHRISTI, INC.<br>2150 Elmwood Ave<br>Lafayette, IN 47904<br><br>   *[Proposed] Defendant-Intervenor*. | Civil Case No. 1:21-cv-00169 (ABJ) |

**MEMORANDUM IN SUPPORT OF
RATIO CHRISTI'S MOTION TO INTERVENE AS DEFENDANT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ III

INTRODUCTION ........................................................................................................................... 1

BACKGROUND ............................................................................................................................. 2

   I. Regulatory Background ................................................................................... 2

   II. Factual Background ......................................................................................... 3

   III. Procedural Background ................................................................................... 3

ARGUMENT .................................................................................................................................. 4

   **I. Ratio Christi has a right to intervene.** ............................................................ 4

      A.   Ratio Christi's motion is timely. ................................................................. 5

      B.   Ratio Christi directly benefits from the challenged rule and thus has important, legally protected interests at stake in this case. ................................ 5

      C.   Ratio Christi's interests would be impaired if the rule were vacated as it would lose protection against exclusion from college campuses. ........................... 7

      D.   No existing party adequately represents Ratio Christi's interests. ............. 8

      E.   Ratio Christi has standing to intervene as a defendant. ........................... 11

   **II. Alternately, Ratio Christi satisfies the requirements for permissive intervention.** ................................................................................................ 11

CONCLUSION ............................................................................................................................. 12

TABLE OF AUTHORITIES

**Cases:**

*100Reporters LLC v. United States Department of Justice*,
    307 F.R.D. 269 (D.C. Cir. 2014) .................................................................... 5-6

*Cayuga Nation v. Zinke*,
    324 F.R.D. 277 (D.D.C. 2018) ...................................................................... 6, 8

\* *Crossroads Grassroots Policy Strategies v. Federal Election Commission*,
    788 F.3d 312 (D.C. Cir. 2015) .............................................................. 8, 10, 11

*E.E.O.C. v. National Children's Center., Inc.*,
    146 F.3d 1042 (D.C. Cir. 1998) ....................................................................... 12

*Forest County Potawatomi Community. v. United States*,
    317 F.R.D. 6 (D.D.C. 2016) ............................................................................. 7

*Fund For Animals, Inc. v. Norton*,
    322 F.3d 728 (D.C. Cir. 2003) ............................................................ 5, 10, 11

*Hosanna-Tabor Evangelical Lutheran Church & School v. E.E.O.C.*,
    565 U.S. 171 (2012). ...................................................................................... 7-8

*Karsner v. Lothian*,
    532 F.3d 876 (D.C. Cir. 2008) ...................................................................... 4-5

*Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church in North America*,
    344 U.S. 94 (1952) .......................................................................................... 7

*Me-Wuk Indian Community of the Wilton Rancheria v. Kempthorne*,
    246 F.R.D. 315 (D.D.C. 2007) ........................................................................ 5

\* *Natural Resources Defense Council v. Costle*,
    561 F.2d 904 (D.C. Cir. 1977) .................................................................... 7-10

*Roane v. Leonhart*,
    741 F.3d 147 (D.C. Cir. 2014 ........................................................................... 5

*Roeder v. Islamic Republic of Iran*,
    333 F.3d 228 (D.C. Cir. 2003) ....................................................................... 11

*Smuck v. Hobson*,
    408 F.2d 175 (D.C. Cir. 1969) ......................................................................... 9

---

\* Cases primarily relied upon are marked with an asterisk.

*Southwest Center for Biological Diversity v. Berg*,
    268 F.3d 810 (9th Cir. 2001) .................................................................................. 7

\* *Trbovich v. United Mine Workers*,
    404 U.S. 528 (1972) ................................................................................................ 8, 9

**Statutes:**

Improving Free Inquiry, Transparency, and Accountability at Colleges and
    Universities, 85 Fed. Reg. 59,916 (Sept. 23, 2020) ............................................. 2

**INTRODUCTION**

This case is about whether public colleges and universities must respect the First Amendment rights of religious student groups on campus. Last fall, the U.S. Department of Education issued a rule requiring these institutions to respect religious students' rights as a condition of receiving federal funds. Under the rule, universities must respect the First Amendment rights of religious student groups, including their expressive association right to ensure that their leaders share their theological beliefs. In this lawsuit, a secular campus group and a student challenge this rule, claiming not only that the Department lacked legal authority to require college campuses to comply with the First Amendment, but also that religious student groups ultimately do not have the right of equal access to public campuses.

Ratio Christi, Inc. is a Christian apologetics ministry with student chapters at over a hundred college and university campuses, and it seeks to intervene in this action to defend the lawfulness of the Department's rule. As a private religious group, Ratio Christi requires its leaders to share its theological beliefs, including basic teachings about the Christian faith. Because Ratio Christi requires its leaders to share its theological beliefs, in the past, several universities have sought to exclude it from campus resources or from recognition as a registered student group. Ratio Christi has even had to go to court twice to persuade college administrators to respect its First Amendment freedoms. The Department rule sought to redress exactly this sort of exclusionary treatment for religious student groups, by ensuring through grant conditions that religious groups are welcome on campus, rather than leaving students to seek redress on their own or through litigation. And so Ratio Christi is a direct beneficiary of the Department's rule.

Because Rule 24 gives Ratio Christi the right to defend the rule and to seek to protect its own constitutional rights, the Court should grant this motion to intervene.

1

## BACKGROUND

**I.     Regulatory Background**

Last fall, the U.S. Department of Education enacted a rule protecting student groups by requiring universities receiving federal grants to respect religious students' constitutional rights. The Department revised its regulations "to encourage institutions of higher education to foster environments that promote open, intellectually engaging, and diverse debate, including through compliance with the First Amendment to the U.S. Constitution for public institutions and compliance with stated institutional policies regarding freedom of speech, including academic freedom, for private institutions." Improving Free Inquiry, Transparency, and Accountability at Colleges and Universities, 85 Fed. Reg. 59,916 (Sept. 23, 2020).

The chief mode of encouraging these institutions to do this was to require "public institutions of higher education that receive a Direct Grant or subgrant from a State-Administered Formula grant program of the Department to comply with the First Amendment, as a material condition of the grant." *Id.* at 59,918 (and codified at 34 C.F.R. §§ 75.500(b)(1) & 76.500(b)(1)). With more specificity, this rule requires "a public institution to not deny a religious student organization any of the rights, benefits, or privileges that are otherwise afforded to other student organizations." *Id.* at 59,916. These privileges include "full access to the facilities of the public institution, distribution of student fee funds, and official recognition of the student organization by the public institution" and prohibits withholding these privileges "because of the religious student organization's beliefs, practices, policies, speech, membership standards, or leadership standards, which are informed by sincerely held religious beliefs." *Id.* at 59,979 and 59,980 (and codified at 34 C.F.R. §§ 75.500(d), 76.500(d)). "Through these final regulations, the Department reinforces First Amendment freedoms such as the freedom of speech and free exercise of religion." 85 Fed. Reg. at 59,916.

## II. Factual Background

Ratio Christi is a Christian apologetics ministry with student chapters across the country, including at public universities. Some of those public universities have sought to deny Ratio Christi recognition and access to campus resources because of its theologically informed leadership requirements. Miller Decl. ¶¶ 22–30.

Part of Ratio Christi's mission is to be an expressive student organization at universities, and to protect its and its members' constitutional rights on campus. Miller Decl. ¶¶ 4, 42, 49, 50, 54, 67. Ratio Christi and its members intend to express their religious and other beliefs on each university or college campus through many means. These include flyers, signs, peaceful demonstrations, hosting tables with information, inviting speakers, and talking with fellow students about Christian beliefs and how they impact various social, moral, cultural, and ethical matters, among other things. Miller Decl. ¶¶ 4, 20, 65.

Any student can attend Ratio Christi's events and join the organization. Miller Decl. ¶¶ 5, 41. But Ratio Christi requires that those who lead the Christian organization share its religious beliefs. Miller Decl. ¶¶ 22–30. As a result, several universities have denied its student chapters registered status, limiting or eliminating their access to funding, meeting and event space, administrative support, and the ability to advertise their meetings and events on campus. Miller Decl. ¶¶ 54–66. Sometimes these disputes are resolved after negotiations, but not always. In recent years, Ratio Christi was able to resolve a dispute with the university over campus access at least 30 times without litigation. Miller Decl. ¶¶ 60–61. But only through litigation were two of its student chapters able to access campus resources on equal terms. Miller Decl. ¶¶ 55–59.

## III. Procedural Background

Several months after the Department's final rule was promulgated, a secular student group and a student sued the Department and its Secretary. *See generally* Compl. ECF No. 1. They ask the Court to vacate the rule. Compl. ¶ 106(c). They claim that the rule's additions of the new sections protecting religious student groups, subsection (d) to 34 C.F.R. §§ 75.500 & 76.500, were *ultra vires* and unconstitutional. *Id.* ¶ 106(a). Despite recent Supreme Court decisions that reaffirmed religious student groups have First Amendment rights to equal access of campus resources, the secular plaintiffs claim that "the First Amendment does not even allow the [provisions] that the Department insists that the Amendment requires." *Id.* ¶ 6. "Religious student clubs have no constitutional right" to access campus resources. *Id.*

## ARGUMENT

Ratio Christi satisfies the requirements under Federal Rule of Civil Procedure 24(a) and (b) to intervene as of right and permissively as a party defendant. This case concerns the First Amendment rights of religious groups on college campuses, their right to select their leaders, and whether the U.S. Department of Education has the power to ensure those protections through grant conditions. The secular plaintiffs ask this Court to vacate the rule on the theory that religious student groups like Ratio Christi have no First Amendment rights to access campus resources, and that the Department lacks authority to protect them. This case thus directly concerns the rights of religious groups like Ratio Christi, who directly benefit from the challenged rule. This Court should grant intervention to Ratio Christi, as the party best equipped to defend its own constitutional rights and religious autonomy.

### I. Ratio Christi has a right to intervene.

To intervene as of right, "(1) the application to intervene must be timely; (2) the applicant must demonstrate a legally protected interest in the action; (3) the action must threaten to impair that interest; and (4) no party to the action can be an adequate representative of the applicant's interests." *Karsner v. Lothian*, 532 F.3d 876,

4

885 (D.C. Cir. 2008). Because Ratio Christi meets each of these elements, this Court should allow it to intervene as a defendant to defend the Department's rule protecting religious groups' constitutional liberties.

### A. Ratio Christi's motion is timely.

First, Ratio Christi's application to intervene is timely because this case has just begun. The timeliness requirement "is aimed primarily at preventing potential intervenors from unduly disrupting litigation, to the unfair detriment of the existing parties." *Roane v. Leonhart*, 741 F.3d 147, 151 (D.C. Cir. 2014). The complaint was filed on January 19, 2021, and return of service has not yet been filed. Ratio Christi moved to intervene as early in the case as is possible. Ratio Christi thus does not seek to alter any current deadlines, and its addition to the case will not disrupt any ongoing course of litigation or result in any prejudice to the parties. *See, e.g.*, *Fund For Animals, Inc. v. Norton*, 322 F.3d 728, 735 (D.C. Cir. 2003) (motion to intervene filed less than two months after the plaintiffs filed their complaint and before the defendants filed an answer was timely); *Me-Wuk Indian Cmty. of the Wilton Rancheria v. Kempthorne*, 246 F.R.D. 315, 319 (D.D.C. 2007) (motion to intervene filed less than three months after the complaint was timely).

### B. Ratio Christi directly benefits from the challenged rule and thus has important, legally protected interests at stake in this case.

Second, Ratio Christi has a legally protected interest as the direct beneficiary of the Department's rule. The Department's rule protects the First Amendment freedoms of religious student groups, and specifically the freedom to select its leaders based on religious criteria. Religious student groups like Ratio Christi therefore have important, legally protected interests in the outcome of this case.

Under Rule 24(a), a prospective intervenor must "demonstrate a legally protected interest in the action." *100Reporters LLC v. U.S. Dep't of Justice*, 307 F.R.D. 269, 275 (D.C. Cir. 2014). Generally, "[w]here a party seeks to intervene as a defendant in

5

order to uphold or defend an agency action," it has a legally protectable interest if it can establish that it would be harmed "by the setting aside of the government's action it seeks to defend, that this injury would have been caused by that invalidation, and the injury would be prevented if the government action is upheld." *Cayuga Nation v. Zinke*, 324 F.R.D. 277, 280, 282 (D.D.C. 2018).

This requirement recognizes that "the interest of justice is best served when all parties with a real stake in a controversy are afforded an opportunity to be heard." *Hodgson v. United Mine Workers of Am.*, 473 F.2d 118, 1130 (D.C. Cir. 1972). The requirement operates largely as a "practical guide," with the aim of "disposing of disputes with as many concerned parties as may be compatible with efficiency and due process." *100Reporters LLC*, 307 F.R.D. at 275 (quoting *Wildearth Guardians v. Salazar*, 272 F.R.D. 4, 12–13 (D.D.C. 2010)).

Ratio Christi would be harmed by vacating the Department's rule, which would remove the proactive measures protecting its chapters from exclusion from public university campuses. Miller Decl. ¶¶ 54–79. Under the status quo, the Department's rule ensures that federal universities that fail to respect the First Amendment freedoms of religious groups like Ratio Christi face a federal compliance process and, ultimately, risk their federal funding. If the secular plaintiffs succeed and this Court were to vacate the rule, Ratio Christi would lose that proactive federal administrative protection, and it would be on its own to defend its rights. Miller Decl. ¶¶ 67–79. Plus, the secular plaintiffs seek not only to eliminate these protections, but seek a ruling that Ratio Christi and other religious student groups do not have the First Amendment right to select their leaders. *See* Compl. ¶ 6. This lawsuit thus endangers Ratio Christi's right to access campus resources at more than a hundred campuses across the country. *See* Miller Decl. ¶¶ 20–21 & Exhibit 3. Because Ratio Christi is among the beneficiaries of the challenged rule, and thus would be harmed if the rule were eliminated, it has a substantial and specific interest in seeing it upheld.

### C. Ratio Christi's interests would be impaired if the rule were vacated as it would lose protection against exclusion from college campuses.

Third, this lawsuit threatens Ratio Christi's interests under the rule. This action seeks to negate a regulatory protection that benefits Ratio Christi in its particular situation of wishing to select its leaders according to its religious beliefs.

In determining whether the movant's interests will be impaired, this Court must "look to the 'practical consequences that [the group] may suffer if intervention is denied." *Forest County Potawatomi Cmty. v. United States*, 317 F.R.D. 6, 14 (D.D.C. 2016) (quoting *Natural Res. Def. Council v. Costle*, 561 F.2d 904, 909 (D.C. Cir. 1977)). A movant that "would be substantially affected in a practical sense by the determination made in [this] action, should, as a general rule, be entitled to intervene." FED. R. CIV. P. 24 (advisory committee's note). Intervention is particularly appropriate when a plaintiff seeks "injunctive relief" that "will have direct, immediate, and harmful effects upon" the group's interests. *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 818 (9th Cir. 2001).

If this suit succeeded, the rule requiring universities to respect religious students' First Amendment rights as a condition of receiving federal funding would be negated. Miller Decl. ¶¶ 67–79. As a result, such institutions would be more cavalier about disregarding those freedoms, especially when facing pressure from opposing voices. The inevitable result will be that groups like Ratio Christi will continue to face rules that exclude them from campus, which would require Ratio Christi to undergo negotiations or pursue litigation for campus access, in a way that other secular groups need not. *See* Miller Decl. ¶¶ 54–66. Not only would this significantly burden the group's ministry on campus, but it also would interfere with the group's ability to conduct its internal affairs "free from state interference." *Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church in N. Am.*, 344 U.S. 94, 116 (1952). This would also embolden universities to require that groups like Ratio Christi accept leaders who do not share their beliefs. Yet requiring a religious group "to accept or retain an

7

unwanted [leader], or punishing [it] for failing to do so, intrudes upon more than a mere [leadership] decision." *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C.*, 565 U.S. 171, 188 (2012). It "interferes with the internal governance of the [group], depriving [it] of control over the selection of those who will personify its beliefs." *Id.*; *see also id.* at 201 (Alito, J., concurring) ("When it comes to the expression and inculcation of religious doctrine, there can be no doubt that the messenger matters.").

In an indirect way, even the complaint concedes that negating the rule would take away real protections from Ratio Christi because Plaintiffs believe taking away those protections is legally required. Ratio Christi disagrees with the Plaintiffs' view of the First Amendment and of the Department's authority. But based on the complaint's own premises, Ratio Christi has an interest in intervening.

### D. No existing party adequately represents Ratio Christi's interests.

Fourth, no party to this action adequately represents Ratio Christi's interests. For Ratio Christi to pass this test, it must show that "representation of [its] interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972); *accord Crossroads Grassroots Policy Strategies v. Fed. Election Comm'n*, 788 F.3d 312, 321 (D.C. Cir. 2015) (burden "not onerous"). Ratio Christi certainly satisfies this "*de minimis*" burden. *Cayuga Nation*, 324 F.R.D. at 280.

Although the federal Department of Education reasonably can be expected to defend the lawfulness of the challenged rule, "a shared general agreement" that the rule is lawful "does not necessarily ensure agreement in all particular respects about what the law requires." *Costle*, 561 F.2d at 912. "[W]ithout calling the good faith of [the Department] into question in any way," the group "may well have honest disagreements with [the Department] on legal and factual matters." *Id.* This is especially so because the federal government's interest in defending the rule is

necessarily broad, public, general, and nonreligious, while Ratio Christi has specific and unique religious interests that need protecting. The government's interest, more specifically, is to regulate its funding of public universities. Ratio Christi's interest is distinct: to exercise and protect the First Amendment rights of its students on public campuses. Miller Decl. ¶¶ 4, 42, 49, 50, 54–66. Ratio Christi is not a recipient of federal funds, and is not akin to being the government's "client" with respect to Ratio Christi's rights. *Id.* ¶ 32. The government's defense of this case is therefore not adequate to defend the First Amendment rights raised by the Plaintiffs, or to defend the benefits Ratio Christi enjoys from the rule, as distinct from the Department's interests in regulating its fund recipients. Miller Decl. ¶¶ 67–79.

Indeed, time and again, courts have held that the federal government cannot adequately defend the specific interests of private individuals or organizations. *See, e.g., Trbovich*, 404 U.S. at 539 (authorizing intervention by a union member who sought to participate in a suit that the Secretary of Labor had instituted against the member's union, upon the member's own complaint: "the Secretary has an obligation to protect the vital public interest in assuring free and democratic union elections that transcends the narrower interest of the complaining union member"); *Smuck v. Hobson*, 408 F.2d 175, 181 (D.C. Cir. 1969) (holding that school board did not adequately represent the interests of intervening parents because the "board represents all parents," while the intervenors "may have more parochial interests centering upon the education of their own children"); *Costle*, 561 F.2d at 912–13 (allowing rubber and chemical companies to intervene in support of EPA because their interest "is more narrow and focused than EPA's" and, "[g]iven the acknowledged impact that regulation can be expected to have upon their operations, appellants' participation in defense of EPA decisions that accord with their interest may also be likely to serve as a vigorous and helpful supplement to EPA's defense").

9

The complaint also claims that universities would facilitate invidious discrimination if they allow on campus religious student groups holding theological requirements for the religious beliefs and sexual conduct of leaders. Compl. ¶¶1–3, 6–9, 22, 24, 27–31, 36–37, 42–43, 46–47, 62, 66, 84–85, 88–92, 102(c). The complaint suggests that the validity of this rule turns on the merits of this claim, rather than on neutral principles of federal law. But, given the strong commitment of the President on this very issue, it raises a concern that there may not be a strong defense of religious student groups who have these leadership requirements. *See* Executive Order on Preventing and Combating Discrimination on the Basis of Gender Identity or Sexual Orientation (Jan. 20, 2021), *available at* https://bit.ly/3qxI94A.

It is Ratio Christi that will feel the brunt of an adverse ruling. The students who are members of Ratio Christi, not the Department, would be faced again with college campuses with no affirmative incentive to allow them to meet and operate on campus. Miller Decl. ¶¶ 67–79. If colleges once again deny Ratio Christi recognition, they will force its student-members off of campus unless they modify their theological beliefs under state pressure or until the students can seek redress in a successful federal civil rights lawsuit, often months or years later. Miller Decl. ¶¶ 54–66. In other words, the group's constitutional freedoms and religious autonomy are at stake, not the Department's. The federal government is ill-suited to articulate these religious interests, let alone vigorously defend them.

In fact, the D.C. Circuit has stated that it "look[s] skeptically on government entities serving as adequate advocates for private parties," *Crossroads*, 788 F.3d at 321. And courts in this Circuit "have often concluded that governmental entities do not adequately represent the interests of aspiring intervenors." *Fund For Animals*, 322 F.3d at 736. Because Ratio Christi's interests are "more narrow and focused" than the Department's, its "participation in defense" of the challenged rule at the very least is "likely to serve as a vigorous and helpful supplement." *Costle*, 561 F.2d at 912–13.

### E. Ratio Christi has standing to intervene as a defendant.

While "a party seeking to intervene as of right must demonstrate that it has standing under Article III of the Constitution," *Fund For Animals*, 322 F.3d at 731–32, the D.C. Circuit has explained that "any person who satisfies Rule 24(a) will also meet Article III's standing requirement." *Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 233 (D.C. Cir. 2003). Thus, "[f]or standing purposes, it is enough that [the Secular Student Alliance] seeks relief, which, if granted, would injure" Ratio Christi. *Crossroads*, 788 F.3d at 318.

Ratio Christi stands to be harmed if Plaintiffs succeed in this lawsuit, and so it has a cognizable injury-in-fact. Ratio Christi has student chapters at 123 university campuses across the country, and it seeks to grow to add more student chapters every day. Miller Decl. ¶¶ 20–21 & Ex. 3. In the past, because of Ratio Christi's theological beliefs informing its leadership requirements, including its requirement that leaders share and live by Christian beliefs, Ratio Christi has been refused campus recognition or faced other obstacles to equal access to campus resources. Miller Decl. ¶¶ 22–30. It has had at least 30 recognition disputes resolved without litigation since 2011 and two disputes that required litigation to resolve. Miller Decl. ¶¶ 54–66. Removing the protections of the challenged rule would remove the federal financial incentive for universities to promptly respect Ratio Christi's First Amendment right to be on campus, returning Ratio Christi to a situation where it likely would need to have regular recourse to legal counsel, negotiations, or litigation to secure its rights.

### II. Alternately, Ratio Christi satisfies the requirements for permissive intervention.

In the alternative, this Court should exercise its discretion and grant Ratio Christi permission to intervene under Rule 24(b), which allows courts to grant permissive intervention to anyone who "has a claim or defense that shares with the main action a common question of law or fact." This Court has "wide latitude" in determining

whether to grant permissive intervention. *E.E.O.C. v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998).

This motion is timely, and allowing intervention will cause no undue delay or prejudice to the original parties because this lawsuit has just begun. Moreover, Ratio Christi's anticipated defense—that the rule is lawful because it protects religious student groups' First Amendment freedoms—shares a common question of law or fact with this action. Indeed, the need for such a defense arises from the secular plaintiffs' claims and argument that colleges should be able to exclude groups like Ratio Christi from campus and that the First Amendment prohibits what the rule requires.

Ratio Christi can provide this Court with a perspective that it otherwise would not hear—the burden vacating the rule would have on a religious student group's First Amendment freedoms and on its ability to conduct internal leadership affairs free of government interference. As Ratio Christi's involvement would aid the Court, it should be allowed to intervene.

## Conclusion

The Court should grant Ratio Christi's motion and allow it to intervene either as of right or permissively. It should not assess the legality and constitutionality of this rule without hearing from the very students and student organizations that the rule is designed to protect.

Respectfully submitted this 18th day of February, 2021.

| | |
|---|---|
| TRAVIS C. BARHAM** <br> Arizona Bar No. 024867 <br> Georgia Bar No. 753251 <br> **ALLIANCE DEFENDING FREEDOM** <br> 1000 Hurricane Shoals Road N.E., Ste. D-1100 <br> Lawrenceville, Georgia 30043 <br> Telephone: (770) 339–0774 <br> Facsimile: (770) 339–6744 <br> tbarham@ADFlegal.org | */s/ Matthew S. Bowman* <br> MATTHEW S. BOWMAN <br> D.C. Bar No. 993261 <br> JULIE MARIE BLAKE** <br> D.C. Bar No. 998723 <br> **ALLIANCE DEFENDING FREEDOM** <br> 440 First Street, NW, Ste. 600 <br> Washington, D.C. 20001 <br> Telephone: (202) 393–8690 <br> Facsimile: (202) 347–3622 <br> mbowman@ADFlegal.org |
| *Application for Admission Pending* <br> **Application for Admission Forthcoming* | TYSON C. LANGHOFER* <br> Arizona Bar No. 032589 <br> **ALLIANCE DEFENDING FREEDOM** <br> 20116 Ashbrook Place, Suite 250 <br> Ashburn, Virginia 20147 <br> Telephone: (480) 388–8205 <br> Facsimile: (202) 347–3622 <br> tlanghofer@ADFlegal.org |

*Attorneys for Proposed Intervenor-Defendant*