**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| SECULAR STUDENT ALLIANCE, *et al.*, |
| Plaintiffs, |
| v. |
| U.S. DEPARTMENT OF EDUCATION, *et al.*, |
| Defendants. |

CASE NO.: 1:21-cv-00169-ABJ

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO RATIO CHRISTI'S MOTION TO INTERVENE AS DEFENDANT**

TABLE OF CONTENTS

BACKGROUND ............................................................................................................................ 2

ARGUMENT ................................................................................................................................. 3

    I.    RATIO CHRISTI DOES NOT SATISFY THE REQUIREMENTS FOR INTERVENTION AS OF RIGHT............................................................................. 3

        A.    Ratio Christi Has Not Identified an Organizational Interest that Would Be Harmed by Invalidation of the Rule. ......................................... 4

        B.    The Causal Chain is too Attenuated to Support Standing.......................... 8

    II.    Permissive Intervention Is Not Warranted............................................................. 10

    III.    If Intervention is Permitted, It Should Be Limited to Submission of Briefs. ....... 12

    IV.    Proposed-Intervenor's Participation as *Amicus Curiae*. ...................................... 13

CONCLUSION............................................................................................................................. 13

# **TABLE OF AUTHORITES**

**Cases**

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) .................................................................................................... 11

*Cigar Association of America v. U.S. Food and Drug Administration*,
  323 F.R.D. 54 (D.D.C. 2017) ..................................................................................... 6, 7

*Cobell v. Jewel*,
  No. 96-01285, 2016 WL 10704595 (D.D.C. March 30, 2016) .................................... 11

*Crossroads Grassroots Pol'y Strategies v. FEC*,
  788 F.3d 312 (D.C. Cir. 2015) .................................................................................... 4, 8

*Ctr. for Biological Diversity v. EPA*,
  274 F.R.D. 305 (D.D.C. 2011) ....................................................................................... 4

*Ctr. for Law and Educ. v. Dep't of Educ.*,
  396 F.3d 1152 (D.C. Cir. 2005) ................................................................................... 10

*Deutsche Bank Nat'l Tr. Co. v. FDIC*,
  717 F.3d 189 (D.C. Cir. 2013) ............................................................................... 3, 4, 6

*EEOC v. Nat'l Children's Ctr., Inc.*,
  146 F.3d 1042 (D.C. Cir. 1998) ................................................................................... 11

*Envt'l Working Grp. v. FDA*,
  301 F. Supp. 3d 165 (D.D.C. 2018) ............................................................................... 5

*EPIC v. Presidential Advisory Comm'n on Election Integrity*,
  878 F.3d 371 (D.C. Cir. 2017) ....................................................................................... 5

*Equal Rts. Ctr. v. Post Props., Inc.*,
  633 F.3d 1136 (D.C. Cir. 2011) ..................................................................................... 6

*Food and Water Watch v. Vilsack*,
  808 F.3d 905 (D.C. Cir. 2015) .................................................................................. 7, 9

*Freedom Watch, Inc. v. McAleenan*,
  442 F. Supp. 3d 180 (D.D.C. 2020) ............................................................................... 7

*Friends of Animals v. Jewell*,
  828 F.3d 989 (D.C. Cir. 2016) ....................................................................................... 4

*In re Idaho Conservation League*,
   811 F.3d 502 (D.C. Cir. 2016) .................................................................................... 9

*Int'l Acad. of Oral Med. and Toxicology v. FDA*,
   195 F. Supp. 3d 243 (D.D.C. 2016) ............................................................................ 8

*Jin v. Ministry of State Sec.*,
   557 F. Supp. 2d 131 (D.D.C. 2008) .......................................................................... 13

*Keepseagle v. Vilsack*,
   307 F.R.D. 233 (D.D.C. 2014) .................................................................................. 11

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ........................................................................................... 4, 8, 9

*Nat'l Ass'n of Home Builders v. U.S. Army Corps of Eng'rs*,
   519 F. Supp. 2d 89 (D.D.C. 2007) ............................................................................ 11

*Nat'l Fair Hous. All. v. Carson*,
   330 F. Supp. 3d 14 (D.D.C. 2018) ...................................................................... 10, 11

*Nat'l Treasury Emp. Union v. United States*,
   101 F.3d 1423 (D.C. Cir. 1996) .................................................................................. 8

*Old Dominion Elec. Coop. v. FERC*,
   892 F.3d 1223 (D.C. Cir. 2018) ................................................................................ 10

*Renal Physicians Ass'n v. HHS*,
   489 F.3d 1267 (D.C. Cir. 2007) .................................................................................. 9

*Scotts Valley Band of Pomo Indians v. U.S. Dep't of the Interior*,
   337 F.R.D. 19 (D.D.C. 2020) .................................................................................... 10

*Sierra Club v. Antwerp*,
   523 F. Supp. 2d 5 (D.D.C. 2007) .............................................................................. 11

*Sierra Club v. EPA*,
   754 F.3d 995 (D.C. Cir. 2014) .................................................................................... 4

*Stringfellow v. Concerned Neighbors in Action*,
   480 U.S. 370 (1987) ............................................................................................ 12, 13

*Turlock Irrigation Dist. v. FERC*,
   786 F.3d 18 (D.C.Cir.2015) ............................................................................... 5, 6, 7

*United States v. Facebook*,
  456 F. Supp. 3d 105 (D.D.C. 2020) ......................................................................................... 12

*United States v. Microsoft Corp.*,
  No. Civ.A.98-1232, 2002 WL 319139 (D.D.C. Feb. 28, 2002) ................................................ 13

**Rules**

Fed. R. Civ. P. 24 .................................................................................................................. 3, 4, 11, 12

LCvR 7 ..................................................................................................................................... 13

**Regulations**

85 Fed. Reg. 59,916 (Sept. 23, 2020) ............................................................................................ 2

This case is a straightforward challenge by the Secular Student Alliance and an individual university student, Declan Galli, to a Department of Education (ED) rulemaking that prohibits public institutions from denying benefits to religious student organizations on the basis of their religious beliefs as a condition of federal funding.  Before the Rule existed, public institutions were free to decide for themselves, consistent with all applicable law, including the U.S. Constitution, how religious student organizations would operate on campus.  And if the Rule were invalidated, public institutions would simply return to this status quo.  Even now, institutions may decide to forego grants from ED and create their own policies for student groups on campus.

Yet, Ratio Christi, a religious student organization, seeks to intervene as a defendant in this case, claiming that invalidation of the Rule would necessarily result in denied access to campus benefits at public colleges and universities across the country.  But Ratio Christi lacks standing, dooming its attempts to intervene both as of right and permissively.  First, Ratio Christi fails to explain how invalidation of the Rule would perceptibly impair its organizational activities. Second, even if Ratio Christi could establish an organizational injury, it cannot establish causation, as the independent decisions of public institutions where Ratio Christi hopes to gain access break the causal chain.  And Ratio Christi further fails to satisfy the requirements for permissive intervention because it does not—nor could it—share any common defense with ED, the government agency charged with defending its own rulemakings and authority.

Ratio Christi is simply an organization with a mission-based interest in the outcome of this case.  And, while the Court may wish to hear from Ratio Christi in the capacity of *amicus curiae*— which Defendants would not oppose—Ratio Christi has not established an interest to warrant involvement as a party in this litigation.  Accordingly, Defendants respectfully request that Ratio Christi's motion to intervene be denied.

## **BACKGROUND**

This case concerns a Final Rule promulgated by ED with the stated intent to "promote the First Amendment's guarantees of free expression and academic freedom," "align with Federal statutes to protect free expression in schools," and "protect free speech on campuses nationwide." Direct Grant Programs, State-Administered Formula Grant Programs, Non Discrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance, Developing Hispanic-Serving Institutions Program, Strengthening Institutions Program, Strengthening Historically Black Colleges and Universities Program, and Strengthening Historically Black Graduate Institutions Program ("the Rule"), 85 Fed. Reg. 59,916 (Sept. 23, 2020). Among other things, the Rule requires that, as a condition of funding, each public institution:

> [S]hall not deny to any student organization whose stated mission is religious in nature and that is at the public institution any right, benefit or privilege that is otherwise afforded to other student organizations at the public institution . . . because of the religious student organization's beliefs, practices, policies, speech, membership standards, or leadership standards, which are informed by sincerely held religious beliefs.

*Id.* at 59,980. This requirement is intended to prevent the exclusion of religious student groups "from receiving neutral and generally available government benefits," and forcing them "to choose between their religion" and receiving these benefits. *Id.* at 59,917.

Plaintiffs, a secular student organization and university student, filed the present lawsuit, challenging the Rule on a number of constitutional and statutory grounds. Complaint (Jan. 19, 2021), ECF No. 1. Plaintiffs claim that Defendants issued the Rule *ultra vires* and in violation of the Administrative Procedure Act ("APA") because it was issued in excess of statutory authority and jurisdiction. *Id.* ¶¶ 67-80. Plaintiffs also claim that the Rule violates the First Amendment, *id.* ¶¶ 81-99, and is arbitrary and capricious, *id.* ¶¶ 100-105. Plaintiffs ask the Court for declaratory

2

relief, to vacate and set aside the Rule, and to issue an injunction barring its enforcement, as well as fees and costs. *Id.*, Prayer for Relief.

After the suit was filed, Ratio Christi filed the present motion to intervene as a defendant. Memorandum in Support of Ratio Christi's Motion to Intervene as Defendant ("Mot.") (Feb. 18, 2021), ECF No. 6-1. "Ratio Christi is a Christian apologetics ministry with student chapters across the country, including at public universities." *Id.* at 3. "Any student can attend Ratio Christi's events and join the organization," but "those who lead the Christian organization" must "share its religious beliefs." *Id.* Ratio Christi seeks to intervene in this lawsuit to "defend the rule" and "protect its own constitutional rights." *Id.* at 1. According to the organization, Ratio Christi "has been refused campus recognition or faced other obstacles to equal access to campus resources in the past" because of its leadership requirements, but has been able to resolve these disputes, largely without litigation. *Id.* at 11.

## ARGUMENT

**I. RATIO CHRISTI DOES NOT SATISFY THE REQUIREMENTS FOR INTERVENTION AS OF RIGHT.**

Federal Rule of Civil Procedure 24(a)(2) allows any party to intervene in an action when the party files a timely motion and "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest." The D.C. Circuit interprets Rule 24 as having four distinct requirements for intervention as of right: "(1) the application to intervene must be timely; (2) the applicant must demonstrate a legally protected interest in the action; (3) the action must threaten to impair that interest; and (4) no party to the action can be an adequate representative of the applicant's interests." *Deutsche Bank Nat'l Tr. Co. v. FDIC*, 717 F.3d 189, 192 (D.C. Cir. 2013) (quotation omitted).

3

Further, and regardless of whether the other requirements for intervention are satisfied, any party seeking to intervene as a defendant must demonstrate Article III standing. *Crossroads Grassroots Pol'y Strategies v. FEC*, 788 F.3d 312, 316 (D.C. Cir. 2015). Otherwise, the D.C. Circuit has reasoned, "'any organization or individual with only a philosophic identification with a defendant—or a concern with a possible unfavorable precedent could attempt to intervene and influence the course of the litigation.'" *Id.* (quoting *Deutsche Bank*, 717 F.3d at 195 (Silberman, J., concurring)). Here, Ratio Christi is just that, an organization concerned about the outcome of this case, but with no legally protected interest sufficient to support Article III standing. For this reason, Ratio Christi's motion to intervene should be denied.[1]

Under any theory of standing, "the irreducible constitutional minimum" requires: "(1) . . . an 'injury in fact' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical'; (2) . . . 'a causal connection between the injury and the conduct complained of'; and (3) it must be 'likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Friends of Animals v. Jewell*, 828 F.3d 989, 991-92 (D.C. Cir. 2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). "Here, then, movants must demonstrate a causal connection between a judgment by this Court for plaintiffs and a concrete and imminent injury-in-fact to themselves." *Ctr. for Biological Diversity v. EPA*, 274 F.R.D. 305, 309 (D.D.C. 2011) (footnote omitted). And because Ratio Christi is not the "object" of the Rule Plaintiffs seek to invalidate, "standing is ordinarily substantially more difficult to establish." *Sierra Club v. EPA*, 754 F.3d 995, 999 (D.C. Cir. 2014) (citations omitted).

### A. Ratio Christi Has Not Identified an Organizational Interest that Would Be Harmed by Invalidation of the Rule.

---

[1] For the same reasons that Ratio Christi cannot show injury in fact or a causal chain sufficient to support Article III standing, it lacks a legally protected interest in this action that could be impaired by invalidation of the Rule. *See* Fed. R. Civ. P. 24(a).

Ratio Christi purports to incur harm to itself as an organization. *See* Mot. 11 ("Ratio Christi stands to be harmed if Plaintiffs succeed in this lawsuit."). To establish organizational standing, Ratio Christi must establish that invalidating the Rule would "cause a concrete and demonstrable injury to the organization's activities that is more than simply a setback to the organization's abstract social interests." *EPIC v. Presidential Advisory Comm'n on Election Integrity*, 878 F.3d 371, 378 (D.C. Cir. 2017) (citation omitted). The Court must undertake a two-part inquiry in considering Ratio Christi's claim—it must find that Ratio Christi plausibly demonstrates that: (1) invalidation of the Rule would "injure[] [Ratio Christi's] interest;" and (2) that Ratio Christi would "use[] its resources to counteract that harm." *Id.*

To satisfy the first prong of the organizational injury analysis, Ratio Christi must establish that invalidation of the Rule would "perceptibly impair[] the organization's ability to provide services." *Turlock Irrigation Dist. v. FERC,* 786 F.3d 18, 24 (D.C.Cir.2015) (citation omitted). Such "perceptible impairment" requires that invalidation of the Rule "cause[ ] an actual inhibition" of Ratio Christi's "daily operations." *See Envt'l Working Grp. v. FDA*, 301 F. Supp. 3d 165, 171 (D.D.C. 2018) (internal quotations and citations omitted).

Ratio Christi offers nothing but speculation that invalidation of the Rule could impede its ability to provide services to students on campus. According to Ratio Christi, if the Rule were invalidated, it would "lose" the "proactive federal administrative protection" ensuring its ability to "access campus resources" and "it would be on its own to defend its rights." Mot. 6.[2] At the threshold, loss of what Ratio Christi characterizes as "proactive federal administrative protection"

---

[2] Though Ratio Christi states that it also is harmed because Plaintiffs allegedly "seek a ruling that Ratio Christi and other religious student groups do not have the First Amendment right to select their leaders," Mot. 6, one need only look at the actual relief sought in Plaintiffs' Complaint to determine that this statement is inaccurate. *See* Compl., Prayer for Relief.

5

by itself would not directly impede Ratio Christi's ability to provide services to students on college campuses.  *See Turlock*, 786 F.3d at 24.  Thus, it is not cognizable as an organizational injury.  *See Equal Rts. Ctr. v. Post Props., Inc.*, 633 F.3d 1136, 1138 (D.C. Cir. 2011) (stating that organization must point to a "concrete and demonstrable injury to its activities" to establish organizational injury).

Ratio Christi posits that a lack of "protection" will result in a loss of ability to "access campus resources."  In addition to presenting a causation concern, *see infra*, and even assuming that a loss of access could inhibit Ratio Christi's operations, such injury would be purely speculative, as evidenced by the very language of Ratio Christi's motion.  Ratio Christi talks of removing an "incentive" for institutions to allow it to access campus resources, but it does not allege that invalidation of the Rule would necessarily require an institution to prohibit access, or that such a result is certain to follow.  Indeed, Ratio Christi states that invalidation of the Rule would put it in a situation "where it *likely* would need to have regular recourse to legal counsel," etc., acknowledging that conflict with campuses is not inevitable.  Mot. 11 (emphasis added).  In relying on these "contingencies," Ratio Christi is not "persuasive" in showing that its interest in providing services on campus "faces an imminent, threatened invasion—i.e., one that is not conjectural or speculative."  *Deutsche Bank*, 717 F.3d at 193.

*Cigar Association of America v. U.S. Food and Drug Administration*, 323 F.R.D. 54 (D.D.C. 2017), a recent case in this district denying a motion to intervene for lack of standing, is instructive.  *In Cigar Association*, a group of public health organizations sought to intervene in a case brought by the tobacco industry challenging an FDA rule instituting new warning requirements on certain tobacco products.  *Id.* at 57.  Collectively, the proposed intervenors asserted that if the rule was invalidated it "would reduce the effectiveness of their anti-tobacco

6

efforts and cause them to expend additional resources to meet their objectives." The court concluded that none of these organizations' activities would be "perceptibly impaired" for the purposes of Article III because each organization "does no more than assert that it will have to expend some undefined amount of additional resources if the Rule is vacated." *Id.* at 62. Similarly, here, Ratio Christi's argument is premised on the idea that invalidation of the Rule would make it more likely that public institutions would impede its access to campus, but it does not allege that the invalidation of the Rule would necessarily require or lead to that result. Ratio Christi, like the proposed intervenors in *Cigar Association*, does no more than "assert" it would "likely" have to expend some "undefined" additional resources if any institution takes action to prohibit the organization on campus, a line of conjecture which is insufficient to support organizational standing. *Id.*

At bottom, Ratio Christi's purported harm is based on its perceived increased risk that it may be unable to provide services to its members in the future. But Ratio Christi has not established that this perception of harm is concrete such that it is "either certainly impending or that there is a substantial risk that it will occur." *Freedom Watch, Inc. v. McAleenan*, 442 F. Supp. 3d 180, 191 (D.D.C. 2020) (quotation omitted). And, to the extent that Ratio Christi purports to have an organizational injury because it "likely would need to have regular recourse to legal counsel, negotiations, or litigation to secure its rights," if the Rule were invalidated, Mot. 11, it is well established, that "an organization's use of resources for . . . advocacy" is not "sufficient to give rise to an Article III injury." *Food and Water Watch v. Vilsack*, 808 F.3d 905, 919 (D.C. Cir. 2015); *Turlock*, 786 F.3d at 24 ("[T]he expenditure of resources on advocacy is not a cognizable Article III injury. . . . This is true whether the advocacy takes place through litigation or administrative proceedings.").

7

Underlying Ratio Christi's assertion of standing is conjecture that achieving its mission might be made slightly more difficult by invalidation of the Rule. But even assuming that Ratio Christi's mission and policy interests might conflict with invalidation of the Rule, such "mission conflict" requires "little more than a passing glance" in the Court's inquiry for organizational standing. *Int'l Acad. of Oral Med. and Toxicology v. FDA*, 195 F. Supp. 3d 243, 256-57 (D.D.C. 2016). That is because it is well established that mere "[f]rustration of an organization's objectives is the type of abstract concern that does not impart standing." *Nat'l Treasury Emp. Union v. United States*, 101 F.3d 1423, 1429 (D.C. Cir. 1996) (quotation omitted); *see also Crossroads*, 788 F.3d at 316 (intervention not warranted when organization has only a "philosophic identification with a defendant" or "a concern with a possible unfavorable precedent").

### B. The Causal Chain is too Attenuated to Support Standing.

Although Ratio Christi's failure to allege an actual and imminent injury is a sufficient basis to reject its motion to intervene, Ratio Christi's failure to identify an injury "fairly traceable" to invalidation of the Rule also defeats its claim to jurisdiction. As discussed, *supra*, Ratio Christi has not adequately explained how it would be injured by the invalidation of the Rule. Nor could it be, as the invalidation of the Rule would not include a mandate to public institutions that they prohibit Ratio Christi's access on campus. Instead, Ratio Christi's purported standing is premised on the theory that, without the Rule, a public institution that currently permits Ratio Christi to be present on campus would prohibit Ratio Christi's access. That change would be the direct cause of any injury to Ratio Christi, not the invalidation of the Rule.

Where, as here, "a [movant's] asserted injury arises from the government's" regulation of "*someone else*," it is "substantially more difficult to establish" standing. *Lujan*, 504 U.S. at 562. That is because the required element of injury depends "on the unfettered choices made by

8

independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict." *Id.* Accordingly, the D.C. Circuit limits the cases where standing exists based on an injury caused by the action of a third party to two circumstances: (1) "[W]here the challenged government action authorized conduct that would otherwise have been illegal;" and (2) "where the record presented substantial evidence of a causal relationship between the government policy and the third-party conduct." *Renal Physicians Ass'n v. HHS*, 489 F.3d 1267, 1275 (D.C. Cir. 2007). And, "[w]hen considering any chain of allegations for standing purposes," courts "reject as overly speculative those links which are predictions of future events," particularly when those events are "future actions to be taken by third parties." *Vilsack*, 808 F.3d at 913.

In *In re Idaho Conservation League*, 811 F.3d 502 (D.C. Cir. 2016), the D.C. Circuit considered whether a group of hardrock mining companies could intervene in a case where environmental organizations asked the Court to issue a writ of mandamus compelling the EPA to promulgate hardrock mining regulations. *Id.* at 506. The EPA and environmental organizations filed a joint motion asking the Court to establish "an agreed upon schedule for a rulemaking for the hardrock mining industry," to resolve the dispute. *Id.* Denying the companies' motions for intervention, the Court explained that the companies lacked standing because, contrary to the companies' assertions, "stricter" regulations was not a "foregone conclusion." *Id.* at 514. Nothing in the case would "require" the EPA to promulgate a specific "stricter" rule. *Id.* Indeed, the EPA retained "discretion to promulgate a rule or decline to do so." *Id.*

Similarly, if the Rule at issue here were to be invalidated, it is not a "foregone conclusion" that public institutions would prohibit Ratio Christi's access to campus. In support of its position, Ratio Christi offers only that, in the past, "because of Ratio Christi's theological beliefs informing

9

its leadership requirements, including its requirement that leaders share and live by Christian beliefs, Ratio Christi has been refused campus recognition or faced other obstacles to equal access to campus resources" at some institutions. Mot. 11. But Ratio Christi also states that these disputes were resolved, Mot. at 3, and presumably many were resolved before this Rule took effect in late 2020. Thus, there is no basis on which to conclude that public institutions would act differently, or resolve disputes differently, based on the invalidation of the challenged Rule. Where there are independent decision makers, such as the institutions where Ratio Christi desires access, "standing between" Ratio Christi and future injury, it "cannot demonstrate that it is substantially probable" that invalidation of the Rule would result in injury to the organization. *Scotts Valley Band of Pomo Indians v. U.S. Dep't of the Interior*, 337 F.R.D. 19, 25 (D.D.C. 2020), *appeal filed*, No. 21-5009 (D.C. Cir. Jan. 15, 2021).

The connections in the purported causal chain are "so attenuated" that Ratio Christi has failed to allege that its purported injuries could be "fairly traceable" to invalidation of the Rule, and "not the result" of the future "independent action[s]" of public institutions. *See Ctr. for Law and Educ. v. Dep't of Educ.*, 396 F.3d 1152, 1161 (D.C. Cir. 2005); *see also Nat'l Fair Hous. All. v. Carson*, 330 F. Supp. 3d 14, 43 (D.D.C. 2018) ("[M]ere unadorned speculation as to the existence of a relationship between the challenged government action and the third-party conduct will not suffice to invoke the federal judicial power."). Because Ratio Christi has not established that this litigation implicates "injury-in-fact to a legally protected interest, causation, and redressability," its motion to intervene should be denied. *Old Dominion Elec. Coop. v. FERC*, 892 F.3d 1223, 1233 (D.C. Cir. 2018).

## II. Permissive Intervention Is Not Warranted.

The Court need not reach the elements of Ratio Christi's request for permissive

intervention because, as with intervention as of right, Ratio Christi's lack of standing prohibits its participation in this matter. *See Carson*, 330 F. Supp. 3d at 64 ("For either intervention as a matter of right or permissive intervention, . . . the movant must establish Article III standing."); *Keepseagle v. Vilsack*, 307 F.R.D. 233, 245 (D.D.C. 2014) ("The [movants'] lack of standing also dooms their request for permissive intervention."); *Cobell v. Jewel*, No. 96-01285, 2016 WL 10704595 at *2 (D.D.C. March 30, 2016) ("[L]ack of standing . . . precludes not only [movants'] intervention as of right, but also [movants'] permissive intervention.").

Ratio Christi also fails to satisfy the other requirements necessary for permissive intervention. To succeed on a motion for permissive intervention under Federal Rule of Civil Procedure 24(b)(2), a movant must establish: "(1) an independent ground for subject matter jurisdiction; (2) a timely motion; and (3) a claim or defense that has a question of law or fact in common with the main action." *EEOC v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998). The claim or defense asserted must be one "that can be raised in courts of law as part of an actual or impending lawsuit," *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 n.18 (1997) (internal quotation omitted).

Ratio Christi does not allege any independent basis for this court's jurisdiction in its motion, which counsels in favor of denying permissive intervention. *See Nat'l Ass'n of Home Builders v. U.S. Army Corps of Eng'rs*, 519 F. Supp. 2d 89, 93 (D.D.C. 2007). Nor could it, as Plaintiffs' claims are that *the Department of Education* acted outside of its statutory authority and violated the APA, not that Ratio Christi violated any law. *Cf. Sierra Club v. Antwerp*, 523 F. Supp. 2d 5, 10 (D.D.C. 2007) (granting motion for permissive intervention when intervenors "would be subject to claims—namely violations of several federal statutes—arising under the laws of the United States"). Also, Ratio Christi's proposed defenses include lack of subject matter jurisdiction

11

over this case, suggesting that the proposed-intervenor would agree with Defendants that the court does not have grounds for subject matter jurisdiction over the claims in this case. *See* Defendant-Intervenor Ratio Christi's Proposed Answer to Complaint, Affirmative Defenses, ECF No. 6-17. Ratio Christi similarly fails to explain what merits "defense" it could possibly have in common with Defendants. Ratio Christi has no authority to raise defenses on the government's behalf—nor to defend a federal agency's interpretation of its statutory authority or exercise of that authority on the agency's behalf—and intervention does not give them any such authority.

Even if Ratio Christi could meet the requirements for permissive intervention—and it cannot—the Court should exercise its discretion to deny intervention given the potential for the addition of another party to complicate the proceedings and further burden the Court and the parties. Because permissive intervention is "an inherently discretionary enterprise, . . . district courts may deny permissive intervention even where a putative intervenor satisfies the requisite requirements." *United States v. Facebook*, 456 F. Supp. 3d 105, 108-09 (D.D.C. 2020) (quotation omitted). Here, Ratio Christi presents no ground for intervention other than an idealistic alignment with the potential effects of the Rule, and speculation as to future events if the Rule was invalidated. Such vague interest is not sufficient to support intervention in this matter.

### III. If Intervention is Permitted, It Should Be Limited to Submission of Briefs.

For the reasons above, intervention should be denied. But if the Court permits intervention, intervention should be limited to submission of briefs on the merits. The proposed intervenors should not be permitted to file motions of their own or to take discovery. *See* Fed. R. Civ. P. 24 advisory committee's note to 1966 amendment ("An intervention of right under [Rule 24(a)(2)] may be subject to appropriate conditions or restrictions responsive among other things to the requirements of efficient conduct of the proceedings."); *Stringfellow v. Concerned Neighbors in*

*Action*, 480 U.S. 370, 382 n.1 (1987) (Brennan, J., concurring in part and concurring in the judgment) ("Even highly restrictive conditions may be appropriately placed on a permissive intervenor, because such a party has by definition neither a statutory right to intervene nor any interest at stake that the other parties will not adequately protect or that it could not adequately protect in another proceeding.").

### IV.   Proposed-Intervenor's Participation as *Amicus Curiae.*

"District courts have inherent authority to appoint or deny *amici*" and "it is solely within the court's discretion to determine the fact, extent, and manner of the participation." *Jin v. Ministry of State Sec.*, 557 F. Supp. 2d 131, 136 (D.D.C. 2008); *see also* LCvR 7(o)(1) ("*Amicus Curiae* may file a brief only upon leave of Court, which may be granted after the submission of a motion for leave to file or upon the Court's own initiative."). Unlike an intervenor, an *amicus curiae* is not a party to the litigation, "but participates only for the benefit of the court." *United States v. Microsoft Corp.*, No. Civ.A.98-1232, 2002 WL 319139 at *3 (D.D.C. Feb. 28, 2002).

Proposed Intervenor-Defendant would suffer no prejudice from the denial of its motion to intervene because, to the extent that it wants its views on this matter to be known to the Court, to the parties, or to the general public, that interest can be accommodated in its entirety by the filing of an amicus brief. The federal government would not oppose such a request from Ratio Christi. If this Court believes that Ratio Christi would be helpful to the Court's resolution of this case in the role of *amici*, Defendants defer to the Court's judgment on that issue.

### CONCLUSION

For the reasons stated above, Ratio Christi's motion to intervene as a defendant should be denied.

Dated: March 18, 2021    Respectfully submitted,

BRIAN M. BOYTON
Acting Assistant Attorney General

CARLOTTA P. WELLS
Assistant Branch Director

*/s/ Rachael L. Westmoreland*
RACHAEL WESTMORELAND
Trial Attorney (GA Bar No. 539498)
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20001
Tel: (202) 514-1280
E-mail: rachael.westmoreland@usdoj.gov