**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

SECULAR STUDENT ALLIANCE, *et al.*,

        Plaintiffs,

v.

U.S. DEPARTMENT OF EDUCATION, *et al.*,

        Defendants.

CASE NO.: 1:21-cv-00169-ABJ

**DEFENDANTS' COMBINED OPPOSITION TO PLAINTIFFS' MOTION FOR
PARTIAL SUMMARY JUDGMENT AND MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL
SUMMARY JUDGMENT**

## TABLE OF CONTENTS

INTRODUCTION ....................................................................................................................1

BACKGROUND ......................................................................................................................2

   I.   STATUTORY BACKGROUND....................................................................................2

   II.  THE FREE INQUIRY RULE.........................................................................................4

   III.   ONGOING RULEMAKING........................................................................................6

PROCEDURAL HISTORY .....................................................................................................7

LEGAL STANDARD..............................................................................................................9

ARGUMENT...........................................................................................................................10

   I.   THE DEPARTMENT VALIDLY PROMULGATED THE FREE INQUIRY RULE
       PURSUANT TO ITS STATUTORY AUTHORITY.....................................................10

   II.  PLAINTIFFS' NON-STATUTORY ULTRA VIRES CLAIM SHOULD BE
       DISMISSED....................................................................................................................17

   III. ANY RELIEF AFFORDED BY THIS COURT SHOULD BE LIMITED IN
       ACCORDANCE WITH THE APA AND EQUITABLE PRINCIPLES..........................17

CONCLUSION........................................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Air Alliance Houston v. Environmental Protection Agency*,
    906 F.3d 1049 (D.C. Cir. 2018) ................................................................................13

*Am. Fed'n of Teachers v. DeVos*,
    484 F. Supp. 3d 731 (N.D. Cal. 2020) ......................................................................12

*Arizona v. Biden*,
    40 F.4th 375 (6th Cir. 2022) .....................................................................................19

*Ass'n of Private Sector Colls. & Univs. v. Duncan*,
    110 F. Supp. 3d 176 (D.D.C. 2015) ..........................................................................11

*Bd. of Governors of Fed. Reserve Sys. v. MCorp Fin., Inc.*,
    502 U.S. 32 (1991) ....................................................................................................17

*Bostock v. Clayton Cnty.*,
    590 U.S. 644 (2020) ........................................................................................... 11, 16

*Citizens to Pres. Overton Park, Inc. v. Volpe*,
    401 U.S. 402 (1971) ....................................................................................................9

*City and County of San Francisco v. Trump Citizens*,
    897 F.3d 1225 (9th Cir. 2018) ...................................................................................16

*Colorado River Indian Tribes v. National Indian Gaming Commission*,
    466 F. 3d. 134 (D.C. Cir. 2006) ................................................................................13

*Duncan v. Walker*,
    533 U.S. 167 (2001) ..................................................................................................10

*Eagle Pharm., Inc. v. Azar*,
    952 F.3d 323 (D.C. Cir. 2020) ..................................................................................10

*Gill v. Whitford*,
    138 S. Ct. 1916 (2018) ..............................................................................................19

*Gulf Restoration Network v. Haaland*,
    47 F. 4th 795 (D.C. Cir. 2022) ..................................................................................18

*Hecht Co. v. Bowles*,
    321 U.S. 321 (1944) ............................................................................................18, 19

*Held v. Am. Airlines, Inc.*,
    13 F. Supp. 2d 20 (D.D.C. 1998) ................................................................................9

*Labrador v. Poe*,
    144 S. Ct. 921 (2024) ..........................................................................................................19

*Leedom v. Kyne*,
    358 U.S. 184 (1958) ...........................................................................................................17

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.*,
    463 U.S. 29 (1983) .............................................................................................................10

*NAACP v. DeVos*,
    485 F. Supp. 3d 136 (D.D.C. 2020) .............................................................................12, 13

*New York v. Dep't Health & Hum. Servs.*,
    414 F. Supp. 3d 475 (S.D.N.Y. 2019) ..................................................................13, 14, 15

*Nuziard v. Minority Bus. Dev. Agency*,
    No. 4:23-cv-00278-P, 2024 WL 965299 (N.D. Tex. Mar. 5, 2024) .......................................19

*Nyunt v. Chairman, Broadcasting Bd. of Governors*,
    589 F.3d 445 (D.C. Cir. 2009) ...........................................................................................17

*Pension Ben. Guar. Corp. v. LTV Corp.*,
    496 U.S. 633 (1990) ...........................................................................................................16

*Trudeau v. FTC*,
    456 F.3d 178 (D.C. Cir. 2006) ...........................................................................................17

*United States ex rel. Mackillop v. Grand Canyon Educ., Inc.*,
    626 F. Supp. 3d 418 (D. Mass. 2022) ................................................................................12

*United States v. Texas*,
    599 U.S. 670 (2023) ...........................................................................................................18

*Washington v. DeVos*,
    481 F. Supp. 3d 1184 (W.D. Wash. 2020) .........................................................................12

**Statutes**

5 U.S.C. § 702(1) ...........................................................................................................................19

5 U.S.C. § 703 ................................................................................................................................18

5 U.S.C. § 706(2)(A) ........................................................................................................................9

20 U.S.C. § 1051 ..............................................................................................................................2

20 U.S.C. § 1101 ..............................................................................................................................2

20 U.S.C. § 1221(b)(1) .....................................................................................................................2

20 U.S.C. § 1221(c)(1) ................................................................................11

20 U.S.C. § 1221e-3 .................................................................. 2, 3, 11, 12

20 U.S.C. § 3474 ........................................................................ 2, 3, 11, 14

42 U.S.C. § 216(b) ......................................................................................14

**Legislative Materiasl**

S. Doc. No. 79-248 (1946) ..........................................................................18

H.R. 4508, 115 Cong. (2018) ......................................................................16

**Rules**

Fed. R. Civ. P. 56(a) .....................................................................................9

**Regulations**

2 C.F.R. § 200.208 ........................................................................................4

2 C.F.R. § 200.300(b) ...................................................................................3

2 C.F.R. § 200.339 ........................................................................................3

2 C.F.R. § 3474.1(a) ......................................................................................4

34 C.F.R. § 75.1(b) .......................................................................................3

34 C.F.R. § 75.500(d) ...................................................................................5

34 C.F.R. § 75.532(a)(1) ..........................................................................3, 16

85 Fed. Reg. 3190 (Jan. 17, 2020) ...............................................................4

85 Fed. Reg. 59,916 (Sept. 23, 2020) ........................................................4, 5

85 Fed. Reg. 75,310 (Nov. 25, 2020) .........................................................5, 6

88 Fed. Reg. 10,857 (Feb. 22, 2023) .............................................................6

**Other Authorities**

Cooper, Michelle Asha. "Update on the Free Inquiry Rule," Department of Education
    Homeroom Blog (Aug. 19, 2021), https://perma.cc/CK9Q-LUC9 ............................6

Dear Colleague Letter: Title VI and Title IX Religious Discrimination in Schools and Colleges
    (Sept. 13, 2004), https://perma.cc/4YXS-V3PD .......................................................15

U.S. Dep't of Educ., About OCR,
   https://perma.cc/37LZ-32Q7..................................................................................14

U.S. Dep't of Educ., Handbook for Discretionary Grant Processes (approved Aug. 16, 2023)
   pt. 6.3.2(a)(3), https://perma.cc/2B7V-JX7F ...................................................4, 15

U.S. Dep't of Educ., Off. of Postsecondary Educ.,
   https://perma.cc/DM9P-BUP ............................................................................2, 15

## INTRODUCTION

Congress mandates that the U.S. Department of Education ("the Department") administer a wide variety of grant programs designed to promote education and academic success in the United States. Consistent with the efficient principles of delegation to the Executive, Congress does not set out every requirement or condition for participation in these grant programs by statute. Rather, Congress delegated to the Secretary of Education ("the Secretary") statutory authority to issue rules and regulations governing programs administered by the Department, including grant programs. Plaintiffs, Declan Galli and the Secular Student Alliance, take issue with this delegation of authority in challenging the promulgation of grant conditions relating to the treatment of religious student organizations at public colleges and universities. ("the student organization provisions").

Plaintiffs' argument fails for the simple reason that promulgation of the student organization provisions is consistent with the plain text of the Secretary's rulemaking authority and there is no indication that Congress intended to limit the Secretary's authority in the manner suggested by Plaintiffs. Plaintiffs' entire argument flips statutory interpretation on its head by asking the Court to consider extra-textual materials describing how a specific office within the Department treats the First Amendment without reference to the text of the statute itself. Their argument is rendered all the more tenuous as the office that created these extra-textual materials is not responsible for administering the grant programs subject to the student organization provisions that Plaintiffs challenge, so the office's statements about the First Amendment on which they rely are entirely irrelevant to this case.

For the reasons that follow, Defendants ask the Court to reject Plaintiffs' strained interpretation of the Secretary's rulemaking authority, grant Defendants' motion for partial summary judgment, and deny Plaintiffs' motion for partial summary judgment.

## BACKGROUND

## I.   STATUTORY BACKGROUND

The Department oversees a myriad of Direct grant and State-administered grant programs pursuant to the Department's authorizing statutes. Most of the grant programs that provide funding to public institutions of higher education ("public institutions") are run by the Office of Postsecondary Education. *See* U.S. Dep't of Educ., Off. of Postsecondary Educ., https://perma.cc/DM9P-BUP. For example, the Department, through the Office of Postsecondary Education, administers Titles III and V of the Higher Education Act of 1965, as amended ("HEA"), which provide a framework for the delivery of grants to public colleges and universities serving high proportions of low-income and minority students. *See, generally*, 20 U.S.C. § 1051, *et seq.*; 20 U.S.C. § 1101, *et seq.* The Secretary has long regulated these grant programs pursuant to its authority from two statutes: (1) Section 1221e-3 of the General Education Provisions Act ("GEPA"), 20 U.S.C. § 1221e-3; and (2) Section 3474 of the Department's organic statutes, 20 U.S.C. § 3474.

GEPA applies to each "program for which the Secretary or the Department has administrative responsibility as provided by law or by delegation of authority pursuant to law". 20 U.S.C. §§ 1221(b)(1), (c)(1). GEPA provides an umbrella grant of rulemaking authority to the Secretary, directing that:

> The Secretary, in order to carry out functions otherwise vested in the Secretary by law or by delegation of authority pursuant to law, and subject to limitations as may be otherwise imposed by law, is authorized to make, promulgate, issue, rescind,

2

and amend rules and regulations governing the manner of operation of, and governing the applicable programs administered by, the Department.

*Id.* § 1221e-3 ("Section 1221e-3").

Congress also delegated to the Secretary a broad grant of rulemaking authority under 20 U.S.C. § 3474 ("Section 3474"), part of the statutory provisions establishing the Department of Education ("the Department"). Section 3474 states: "The Secretary is authorized to prescribe such rules and regulations as the Secretary determines necessary or appropriate to administer and manage the functions of the Secretary or the Department."

Using Sections 1221e-3 and 3474, the Secretary historically has promulgated a host of conditions on the Department's grant programs operated under Parts 75 and 76 of the Department's regulatory code. *See* 34 C.F.R. § 75.1(b) ("If a direct grant program does not have implementing regulations, the Secretary implements the program under the authorizing statute and, to the extent consistent with the authorizing statute, under the General Education Provisions Act and the regulations in this part."); *id.* § 76.1(b) (same for State-administered grants). These regulations, contained in Title 34 Parts 75, Subpart E and 76, Subpart F of the Code of Federal Regulations, include many conditions that must be met by grantees. A few non-exhaustive examples include the following conditions: "no grantee may use its grant to pay for . . . religious worship, instructions, or proselytization," 34 C.F.R. §§ 75.532(a)(1), 76.532(a)(1); and grantees must "[e]valuate flood hazards in connection with [] construction" and "avoid uneconomic, hazardous, or unnecessary use of flood plains," *id.* §§ 75.611, 76.600(a).

In addition to the grant conditions at 34 C.F.R. parts 75 and 76, the Department's grantees are required to comply with the U.S. Constitution, Federal statutes, other regulations, and the terms and conditions of their awards, as set forth in guidance issued by the Office of Management and Budget and adopted by the Department. *See* 2 C.F.R. § 200.339; *see also* 2 C.F.R. § 200.300(b)

(the "non-Federal entity is responsible for complying with all requirements of the Federal award"); 2 C.F.R. § 3474.1(a) ("The Department of Education adopts the Office of Management and Budget . . . Guidance in 2 CFR part 200. . . ."). Grantees that fail to comply with any of these requirements are subject to various remedies for noncompliance. *See id.* at § 200.339. These remedies may include the imposition of specific conditions by the agency responsible for administering a specific grant, *see* 2 C.F.R. § 200.208. If the awarding agency "determines that noncompliance cannot be remedied by imposing additional conditions" to the award, it "may take one or more of the following actions:" temporarily withholding cash payments; disallowing the cost of the non-compliant action; suspending or terminating the award; initiating suspension proceedings; or withholding future Federal awards for the project or program. *Id.* at § 200.339. Per the Department's Handbook for the Discretionary Grant Process, the specific program office awarding a grant is responsible for compliance. *See* U.S. Dep't of Educ, Handbook for Discretionary Grant Processes (approved Aug. 16, 2023) pt. 6.3.2(a)(3), https://perma.cc/2B7V-JX7F.

## II.    THE FREE INQUIRY RULE

On September 23, 2020, after reviewing comments received on its January 17, 2020 notice of proposed rulemaking, 85 Fed. Reg. 3190, the Department issued a rule entitled "Direct Grant Programs, State Administered Formula Grant Programs, Non Discrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance, Developing Hispanic-Serving Institutions Program, Strengthening Institutions Program, Strengthening Historically Black Colleges and Universities Program, and Strengthening Historically Black Graduate Institutions Program." 85 Fed. Reg. 59,916 ("Free Inquiry Rule").

The Free Inquiry Rule contained a number of provisions but, as relevant here, exercising authority under Section 1221e-3 and Section 3474, the Secretary added the following condition to the Department's regulations governing direct grants and State-administered grants:

> As a material condition of the Department's grant, each [grantee or State or subgrantee] that is a public institution shall not deny to any student organization whose stated mission is religious in nature and that is at the public institution any right, benefit, or privilege that is otherwise afforded to other student organizations at the public institution (including but not limited to full access to the facilities of the public institution, distribution of student fee funds, and official recognition of the student organization by the public institution) because of the religious student organization's beliefs, practices, policies, speech, membership standards, or leadership standards, which are informed by sincerely held religious beliefs.

*Id.* at 59,979-80 (codified at 75 C.F.R. §§ 75.500(d), 76.500(d)) ("the student organization provisions").

The Free Inquiry Rule did not describe the reporting process for an alleged violation of the student organization provisions or state that any specific office would conduct investigations of alleged violations. Rather, the Free Inquiry Rule stated only that "the Department routinely investigates violations of its regulations, and attorneys within the Department's Office of General Counsel regularly advise the relevant office within the Department on any legal issues that arise in an investigation." *Id.* at 59,945. The Free Inquiry Rule also referenced the Department's regulations incorporating OMB's guidance for non-compliance with grant conditions. *Id.* at 59,920 n. 32.

Roughly two months after the Secretary promulgated the Free Inquiry Rule, the Department published a "Notice of Reporting Process." 85 Fed. Reg. 75,310 (Nov. 25, 2020). The Notice of Reporting Process similarly did not specify that a particular office would have jurisdiction over investigations of alleged violations. The Notice of Reporting Process simply

indicated that "[a]nyone may report an alleged violation of [the student organization provisions] to the Department by email at religiousliberty@ed.gov." *Id.* at 75,311.

## III.   ONGOING RULEMAKING

On August 18, 2021, the Department posted an "update to the Free Inquiry Rule" on its website. Cooper, Michelle Asha. "Update on the Free Inquiry Rule," Department of Education Homeroom Blog (Aug. 19, 2021), https://perma.cc/CK9Q-LUC9. In that update, the Department advised that it was "conducting a review of [the student organization provisions] while keeping in mind the importance of several key elements, including First Amendment protections, nondiscrimination requirements, and the promotion of inclusive learning environments for all students." *Id.* Following that review, the Department anticipated "publishing a notice of proposed rulemaking in the Federal Register to propose rescinding parts of the Free Inquiry Rule." *Id.*

On February 22, 2023, the Department issued a notice of proposed rulemaking seeking comment on the rescission of the student organization provisions. Direct Grant Programs, State-Administered Formula Grant Programs, 88 Fed. Reg. 10,857 ("2023 NPRM"). During the Department's review of the student organization provisions, it heard from stakeholders who raised concerns about being able to tailor policies to meet the needs of their students, confusion about the interplay between the student organization provisions and other nondiscrimination requirements, and concerns that the Free Inquiry rule could increase discrimination against marginalized students, contrary to its intent. *Id.* at 10,859. Accordingly, the Department proposed to rescind the student organization provisions, "which would eliminate the confusion caused by the 2020 final rule and leave adjudication of these complex and important constitutional questions to the institutions themselves, their communities, and the judiciary." *Id.* at 10,861-10,862.

The Department received 58,000 comments on the 2023 NPRM. Defs.' Suppl. to the Parties' Feb. 21, 2024 Joint Status Report ¶ 4, ECF No. 41. Since the comment period closed, the Department has continued to work towards issuance of a final rule but has not finalized it as of this date of this filing.

## PROCEDURAL HISTORY

Plaintiffs filed their complaint on January 19, 2021, raising four claims challenging the student organization provisions of the Free Inquiry Rule. *See* Compl., ECF No. 1 ("Compl."). First, Plaintiffs claim that the addition of the student organization provisions "exceed[s] the Department's delegated authority and constitute[s] *ultra vires* agency action." *Id.* ¶¶ 68-72. Second, Plaintiffs claim that the addition of the student organization provisions violates the Administrative Procedure Act ("APA"), because it is "in excess of the agency's statutory jurisdiction, authority, or limitations." *Id.* ¶¶ 73-80 (citing 5 U.S.C. § 706(2)(C)). Third, Plaintiffs claim that the student organization provisions violate the First Amendment, and thus violate sections 706(2)(A) and (B) of the APA. *Id.* ¶¶ 81-99. Finally, Plaintiffs claim that the student organization provisions violate the APA because they are arbitrary and capricious. *Id.* ¶¶ 100-105. In addition to declaratory relief, Plaintiffs ask the Court to "[v]acate and set aside the challenged provisions," "[i]ssue an injunction barring enforcement" of the challenged provisions, and award Plaintiffs reasonable costs and expenses, including attorneys' fees. *Id.* ¶ 106(c)-(e), Prayer for Relief.

On February 23, 2021, Plaintiffs moved for partial summary judgment on their claims that the addition of the student organization provisions "are *ultra vires* and violate the Administrative Procedure Act by exceeding the Department's statutory authority and jurisdiction." Combined Mot. for Partial Summ. J. and Mem. of P .& A. 2, ECF No. 12 ("Pls.' Mot."). Plaintiffs did not

7

move for summary judgment on their remaining claims, stating that those claims "would require the administrative record under Local Rule 7(n) and potentially also other discovery" and that "partial summary judgment" on the statutory authority claims could "obviate the need for the Court to decide the remaining claims." *Id.* at 12 n.6. On March 3, 2023, Defendants moved to stay briefing on Plaintiffs' motion for partial summary judgment pending resolution of any motion to dismiss or, in the alternative, until 21 days after the filing of Defendants' responsive pleading, which was due on April 23, 2021. Defs.' Mot. to Stay Briefing on Pls.' Mot. for Partial Summ. J., ECF No. 15. On March 4, 2021, the Court granted Defendants' motion, noting that "it is not clear at this time what the status of the matter will be 21 days after the filing of a responsive pleading, or what schedule will be necessary or appropriate at that time," and ordering that "briefing of the motion for partial summary judgment [] will be held in abeyance pending further order of the Court." Minute Order (Mar. 4, 2021).

Before Defendants' responsive pleading deadline, on April 20, 2021, the parties jointly moved to stay the case to "allow Defendants to consider regulatory options that may obviate the need for this litigation." Joint Mot. to Stay, ECF No. 21. On April 21, 2021, the Court granted the parties' joint motion and ordered the submission of a status report in sixty days. Minute Order (Apr. 21, 2021). Since that time, the parties have submitted thirteen joint status reports detailing the Department's regulatory updates, and the case has remained stayed. *See* ECFs No. 22, 24, 26-27, 29-33, 36, 38-40. In the parties' final joint status report, Plaintiffs opposed any continued stay of this matter while Defendants continue their regulatory efforts. Joint Status Report ¶¶ 20-22, ECF No. 40. The Court then ordered Defendants to "supplement the joint status report . . . with more information concerning the anticipated timetable for the completion" of its regulatory process. Minute Order (Feb. 23, 2024). Defendants filed the requested supplement on February

28, 2024, *see* ECF No. 41, and, on March 11, 2024 the Court ordered Defendants to submit another status report on April 12, 2024. Minute Order (Mar. 11, 2024).

On April 12, 2024, Defendants submitted another supplement indicating that "[t]he status of Defendants' rulemaking ha[d] not changed substantially." Defs.' Second Supp. to the Parties' February 21, 2024 Joint Status Rep. ¶ 4, ECF No. 42. In that supplement, Defendants proposed an agreed upon briefing schedule permitting a response to Plaintiffs' Complaint and for resolving Plaintiffs' motion for partial summary judgment. *Id.* ¶ 6. The Court adopted the parties' proposed schedule. Minute Order (Apr. 15, 2024). Defendants answered Plaintiffs' Complaint on May 3, 2024. Defs.' Answer to Pls.' Compl., ECF No. 43.

## LEGAL STANDARD

Summary judgment is appropriate on a showing "that there is no genuine dispute as to any material fact" and that the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "When presented with cross-motions for summary judgment, the court must rule on each party's motion on an individual and separate basis." *Held v. Am. Airlines, Inc.*, 13 F. Supp. 2d 20, 23 (D.D.C. 1998).

Under the APA, an agency's decision must be upheld unless "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or in excess of statutory authority. 5 U.S.C. § 706(2)(A); *see also id.* § 706(2)(B)-(C). The agency's decision is presumed valid under this standard, and the Court asks only whether it "was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971). A decision may be held to be arbitrary and capricious only when the agency "has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, [or] offered an explanation for its decision

that runs counter to the evidence before the agency," or the decision "is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983). The Court may not "substitute its judgment for that of the agency." *Id.*

## ARGUMENT

### I.  THE DEPARTMENT VALIDLY PROMULGATED THE FREE INQUIRY RULE PURSUANT TO ITS STATUTORY AUTHORITY.

Sections 1221e-3 and 3474 provide a broad grant of authority to the Secretary to promulgate grant conditions on programs established by the statutes administered by the Department, including the student organization provisions. Without grappling with the text of Sections 1221e-3 and 3474 or identifying a specific statutory provision that conflicts with these sections, Plaintiffs argue that the Secretary lacked authority to issue the student organization provisions. Plaintiffs essentially advance an argument for limiting the Secretary's regulatory authority to be coextensive with the jurisdiction of the Department's Office for Civil Rights ("OCR"). But nothing in the Department's statutes or prior statements supports Plaintiffs' position. Moreover, their position would require the Court to disregard the plain language of Sections 1221e-3 and 3474. As set forth below, the Department acted well within its statutory authority in promulgating the student organization provisions, and Plaintiffs' argument to the contrary should not succeed.

To resolve this matter, the Court must first determine whether Sections 1221e-3 and 3474 provide a basis for issuing the challenged regulations. When interpreting a statute, the court's task is to construe Congress's intent. *Duncan v. Walker*, 533 U.S. 167, 172 (2001). "In addressing a question of statutory interpretation, [courts] begin with the text." *Eagle Pharm., Inc. v. Azar*, 952 F.3d 323, 330 (D.C. Cir. 2020). And, unless otherwise defined, courts interpret words in a statute

"in accord with the ordinary public meaning of its terms at the time of its enactment." *Bostock v. Clayton Cnty.*, 590 U.S. 644, 654 (2020).

Here, the plain text of Section 1221e-3 and Section 3474 make clear that the Department acted within its statutory authority. Starting with Section 1221e-3, Congress authorized the Secretary "to make, promulgate, issue, rescind, and amend rules and regulations governing the manner of operation of, and governing the applicable programs administered by the Department" in order to "carry out functions otherwise vested in the Secretary by law." 20 U.S.C. § 1221e-3; *see also* 20 U.S.C. § 1221(c)(1) (defining "applicable program" to expansively include "any program for which the Secretary or the Department has administrative responsibility as provided by law or by delegation of authority pursuant to law"). The Department administers a number of direct grant and State-administered grant programs which, for purposes of Section 1221e-3, are "programs administered by the Department," the administration of which is "vested in the Secretary by law." The student organization provisions challenged here "govern" those programs by creating a condition that must be satisfied by grantees who receive direct or State-administered funding. Thus, based on the plain text of Section 1221e-3, there can be no real doubt about the Secretary's authority to promulgate the student organization provisions.

Section 3474 further authorizes the Secretary to "prescribe such rules and regulations as the Secretary determines necessary or appropriate to administer and manage the functions of the Secretary or the Department." 20 U.S.C. § 3474. Here, in promulgating the student organization provisions, the Department determined they were "appropriate" to "administer" the "functions" of the Department, which include overseeing grant programs on public colleges and universities.

As one court described it, the interplay of Sections 1221e-3 and 3474 "fashion[s] an awfully big umbrella." *Ass'n of Private Sector Colls. & Univs. v. Duncan*, 110 F. Supp. 3d 176,

199 (D.D.C. 2015) (upholding regulations implementing gainful employment debt to earnings test and related reporting, disclosure, and certification requirements under Title IV of the HEA). And while challenges to the Department's use of these authorities are few and far between, courts routinely acknowledge the agency's authority to issue regulations to implement programs for which the Secretary has administrative responsibility (such as those governed by the HEA) under Section 1221e-3 and Section 3474. *See Am. Fed'n of Teachers v. DeVos*, 484 F. Supp. 3d 731, 736 (N.D. Cal. 2020) ("The Secretary of the Department of Education . . .  has broad authority to prescribe any rules and regulations that she deems necessary or appropriate to administer the HEA."); *United States ex rel. Mackillop v. Grand Canyon Educ., Inc.*, 626 F. Supp. 3d 418, 436 (D. Mass. 2022) ("The Secretary of Education is vested with the power to promulgate the regulations needed to administer [the Higher Education Act].").

None of the cases relied upon by Plaintiff support a different conclusion. In both *NAACP v. DeVos*, 485 F. Supp. 3d 136 (D.D.C. 2020) and *Washington v. DeVos*, 481 F. Supp. 3d 1184 (W.D. Wash. 2020), the courts considered whether § 1221e-3 and § 3474 authorized the Department to issue rules implementing the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, not statutes administered by the Department. The *NAACP* Court was clear that the CARES Act did not create any "'programs' administered by the Department" for the purpose of § 1221e-3 and that the rulemaking implementing a CARES Act provision was "neither 'necessary' nor 'appropriate' to 'manage the functions of the Secretary or the Department'" for the purpose of § 3474. 485 F. Supp. 3d at 144. Both Courts also relied on arguments specific to the CARES Act in determining that the Department lacked authority for its rulemaking, for example that Congress vested other agencies with rulemaking authority in the CARES Act but did not do so with respect to the Department, *see, e.g.*, *Washington*, 481 F. Supp. 3d at 1193, and that

the Department's rule created a formula for grants that conflicted with the non-discretionary grant duties set out in the CARES Act, *see, e.g. NAACP*, 485 F. Supp. 3d at 144. These cases interpreting the Department's authority with respect to an unrelated statute outside of the Department's usual province have no bearing on its ability to set grant conditions for Department programs, particularly where those conditions do not conflict with any statutory provision.

The other two cases heralded by Plaintiff as holding that an agency cannot rely on its general rulemaking authority are similarly inapposite, as those cases' holdings were limited to a situation where the agency's use of its general authority conflicted with a specific congressional intent to limit the agency's use of authority in that way. In *Air Alliance Houston v. Environmental Protection Agency*, for example, the D.C. Circuit held that the agency could not rely on its "separate, more general authority" when a specific statutory provision indicated "Congress's clear intent to specifically limit the agency's authority." 906 F.3d 1049, 1061 (D.C. Cir. 2018). In *Colorado River Indian Tribes v. National Indian Gaming Commission*, the Court likewise rejected the agency's reliance on its general statutory authority to issue federal rules when the more specific provisions of the statute contemplated joint tribal-state regulation. 466 F. 3d. 134, 137–38 (D.C. Cir. 2006). Here, no such specific statutory provisions or indicia of congressional intent are present to demonstrate similar limits on the Department's authority to issue grant conditions such as the student organization provisions, and the Department's rulemaking authority under § 1221e-3 and § 3474 should not be constrained based on an artifice of Plaintiffs' making.

Plaintiffs also try to employ caselaw rejecting the use of a different rulemaking authority contained in statutes administered by the U.S. Department of Health and Human Services to suggest that the Department cannot rely on § 3474 to promulgate the rule at issue here. *See* Pls.' Mot. 16 (citing *New York v. Dep't Health & Hum. Servs.*, 414 F. Supp. 3d 475, 521 (S.D.N.Y.

2019)). This Court need look no further than the text of the two statutes to determine that they are not analogous. The statute interpreted in *New York* gives the Secretary of Health and Human Services authority to "promulgate all other regulations necessary to the administration of the [Public Health] Service, including regulations with respect to uniforms for employees, and regulations with respect to the custody, use, and preservation of the records, papers, and property of the Service." 414 F. Supp. 3d at 521 (quoting 42 U.S.C. § 216(b)). Section 3474 contains no such limiting examples, gives the Secretary discretion to determine what is "necessary," and is written more broadly, applying to any rule needed to "administer and manage the functions of the Secretary or Department." 20 U.S.C. § 3474. Accordingly, the *New York* court's determination that the statute in that case "addresses the day-to-day administration of the Public Health Service" has no relevance here. *New York*, 414 F. Supp. 3d at 521. In any event, Plaintiffs offer no explanation as to why this Court should rely on a non-precedential case interpreting a totally different statute in the context of a rulemaking by an agency with no relation to the Department.

Having identified no precedent in support of their argument, Plaintiffs turn for support to a flawed understanding of the role that OCR plays with respect to this rule. Pls.' Mot. 12-14. As explained further below, Plaintiffs' argument is based on a false premise—that OCR and the limits of OCR's jurisdiction have anything at all to do with the Free Inquiry Rule. In fact, OCR is not involved in the enforcement of the Free Inquiry Rule, and the reporting of an alleged violation of the rule's grant conditions does not trigger an OCR investigation. Accordingly, OCR's prior statements detailing the limits of its jurisdiction are irrelevant.

OCR is an office of the Department of Education that enforces certain "Federal civil rights laws that prohibit discrimination in programs or activities that receive federal financial assistance from the Department of Education." U.S. Dep't of Educ., About OCR, https://perma.cc/37LZ-

32Q7. Specifically, OCR's jurisdiction extends to "[d]iscrimination on the basis of race, color, and national origin [as] prohibited by Title VI of the Civil Rights Act of 1964; sex discrimination [as] prohibited by Title IX of the Education Amendments of 1972; discrimination on the basis of disability [as] prohibited by Section 504 of the Rehabilitation Act of 1973; and age discrimination [as] prohibited by the Age Discrimination Act of 1975." *Id.* As OCR has regularly expressed, and as Plaintiffs acknowledge, OCR does not enforce rules relating to religious discrimination under the First Amendment. *See, e.g.*, Dear Colleague Letter: Title VI and Title IX Religious Discrimination in Schools and Colleges (Sept. 13, 2004), https://perma.cc/4YXS-V3PD ("OCR's jurisdiction does not extend to religious discrimination."). Nor is OCR involved in the administration of grant awards or ensuring compliance with grant conditions, generally, including compliance with the Free Inquiry Rule, and nothing in the NPRM, Free Inquiry Rule, or subsequent Notice of Reporting Process suggests otherwise. Thus, the breadth of OCR's jurisdiction is irrelevant to the question at hand. Rather, the Office of Postsecondary Education administers most of the grant programs providing funding to public institutions, which are subject to the regulations in Parts 75 and 76 of the Department's regulatory code, and thus that office is responsible for ensuring compliance with those conditions. *See* U.S. Dep't of Educ., Off. of Postsecondary Educ., https://perma.cc/DM9P-BUP; U.S. Dep't of Educ, Handbook for Discretionary Grant Processes (approved Aug. 16, 2023) pt. 6.3.2(a)(3), https://perma.cc/2B7V-JX7F.

The question here is whether Sections 1221e-3 and 3474 authorized the Secretary to promulgate the student organization provisions. Disregarding Plaintiffs' conflation of OCR with the Department as a whole, nothing in Plaintiffs' argument shows that Congress intended the Secretary's authority to be limited to the scope of the statutes that OCR enforces. Indeed, the student organization provisions are not the first grant condition related to the First Amendment

promulgated by the Secretary. The Department's regulations in 34 C.F.R. Parts 75 and 76 already contain a condition that "no grantee may use its grant to pay for . . . religious worship, instructions, or proselytization." *See* 34 C.F.R. §§ 75.532(a)(1), 76.532(a)(1). In the absence of any contrary indication by Congress, this Court should not impose an arbitrary limit on the Secretary's authority by reference to a discrete office within the Department.

Finally, Plaintiffs argue that the introduction of a single bill that never received a vote in either chamber of Congress suggests that Congress intended to limit the Department's authority to regulate in Sections 1221e-3 and 3474. *See* Pls.' Mot. 14 (citing H.R. 4508, 115 Cong. (2018)). Plaintiffs' claim amounts to an argument that every bill introduced by any member of Congress has independent relevance in determining Congressional intent for duly enacted statutes prior to the bill's introduction. Such an interpretation would lead to absurd results and be flatly inconsistent with the Supreme Court's directive that a statute should be interpreted "in accord with the ordinary public meaning of its terms at the time of its enactment." *Bostock*, 590 U.S. at 654. The Supreme Court has also cautioned directly against considering failed legislation, noting that it "lacks persuasive significance." *Pension Ben. Guar. Corp. v. LTV Corp.*, 496 U.S. 633, 650 (1990). Such an approach was also not condoned by the Ninth Circuit in *City and County of San Francisco v. Trump*, cited by Plaintiffs, where the court discussed the "sheer amount" of failed legislation in reference to an executive order, not with respect to interpreting provisions of enacted statutes delegating regulatory authority to an agency. *See* 897 F.3d 1225, 1235 (9th Cir. 2018).

\*     \*     \*

Because the plain text of sections 1221e-3 and 3474 authorize the promulgation of the student organizations provisions, and Plaintiffs have not identified any statutory provision to the

16

contrary, Defendants are entitled to summary judgment on Plaintiffs' claims that the Secretary lacked authority to do so.

## II.   PLAINTIFFS' NON-STATUTORY ULTRA VIRES CLAIM SHOULD BE DISMISSED.

Plaintiffs advance parallel arguments under the APA and an *ultra vires* cause of action for non-statutory review. *See* Pls.' Mot. at 18 (comparing "the APA's prohibition against agency action in excess of statutory authority" and "the bar on *ultra vires* agency action"). An *ultra vires* cause of action, however, is only available when APA review is not. *See Bd. of Governors of Fed. Reserve Sys. v. MCorp Fin., Inc.*, 502 U.S. 32, 43–44 (1991) (citing *Leedom v. Kyne*, 358 U.S. 184 (1958)) (review under an independent ultra vires cause of action is available only where the plaintiff would otherwise be "wholly deprive[d]" of a "meaningful and adequate means of vindicating its statutory rights"). Courts review ultra vires claims under a "very stringent standard" and such claims "rarely succeed." *Nyunt v. Chairman, Broadcasting Bd. of Governors*, 589 F.3d 445, 449 (D.C. Cir. 2009); *see also Trudeau v. FTC*, 456 F.3d 178, 189–90 (D.C. Cir. 2006). Because APA review is available, and Plaintiffs concede that their APA claim rests on the same grounds as their *ultra vires* claims, the Court should treat all of Plaintiffs arguments regarding statutory authority as if they were raised under the available APA cause of action, *see* Pls.' Mot. 18 (arguing "the Rule fails Section 706(2)(C) for all the same reasons that it is *ultra vires*") and dismiss Plaintiffs' *ultra vires* claim under Federal Rule of Civil Procedure 12(b)(6).

## III.   ANY RELIEF AFFORDED BY THIS COURT SHOULD BE LIMITED IN ACCORDANCE WITH THE APA AND EQUITABLE PRINCIPLES.

While Defendants dispute that any relief is necessary for the reasons explained in Part I, any relief afforded by this Court should be limited to the parties and consistent with the APA. In their motion, Plaintiffs ask the court to "vacate, set aside, and enjoin enforcement of the Rule's

amendments to 34 C.F.R. §§ 75.500(d) and 76.500(d)." Pls.' Mot. 20. The Complaint further seeks declaratory relief. Compl. ¶ 106.

As a matter of first principles, the "set aside" language in § 706(2) should not be read as authorizing remedies, which are governed by § 703 of the APA. Section 703 states that "[t]he form of proceeding for judicial review" of agency action is either a "special statutory review proceeding" or, in "the absence or inadequacy thereof," any "applicable form of legal action, including actions for declaratory judgments or writs of prohibitory or mandatory injunction or habeas corpus." 5 U.S.C. § 703. Because Plaintiffs do not purport to identify any applicable "special statutory review proceeding," § 703 affords them only traditional equitable relief. See S. Doc. No. 79-248, at 36–37 (1946) (referring to § 703 as governing remedies). Section 706(2) does not address remedies at all. Rather, § 706(2) is properly understood as a rule of decision directing the reviewing court to disregard unlawful "agency action, findings, and conclusions" in resolving the case before it, consistent with basic principles of judicial review. Vacatur is therefore not an available remedy under the APA. *See United States v. Texas*, 599 U.S. 670, 693–99 (2023) (Gorsuch, J., concurring in the judgment).

Defendants recognize that the D.C. Circuit has described vacatur of an unlawful agency action as the "typical remedy." *Gulf Restoration Network v. Haaland*, 47 F. 4th 795, 804 (D.C. Cir. 2022). But even if the APA authorizes some sort of vacatur, the D.C. Circuit has treated vacatur as a discretionary equitable remedy, not one that is automatic or compelled in every case. *See id.* ("Although vacatur is the typical remedy for an APA violation, it is not inevitable."). Further, the Supreme Court has explained that Congress's authorization for courts to issue a remedy "hardly suggests an absolute duty" to grant such relief "under any and all circumstances." *Hecht Co. v. Bowles*, 321 U.S. 321, 329 (1944). Rather, a statutory provision authorizing remedies,

especially equitable remedies, should be construed consistent with "the traditions of equity practice." *Id.* ("The essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case."). The APA reinforces that longstanding rule by explicitly stating that its authorization of judicial review does not affect "the power or duty of the court to . . . deny relief on any . . . equitable ground." 5 U.S.C. § 702(1).

Here, under traditional equitable principles, the Court should decline to vacate the student organization provisions because declaratory judgment or a more limited injunction would suffice. *See Nuziard v. Minority Bus. Dev. Agency*, No. 4:23-cv-00278-P, 2024 WL 965299, at *40–44 (N.D. Tex. Mar. 5, 2024) (rejecting universal vacatur for equitable reasons where injunction would suffice). Plaintiffs do not identify any reason why vacatur of the student organization provisions is necessary to afford them complete relief in this case, and indeed ask for declaratory relief and an injunction as well. "A plaintiff's remedy must be tailored to redress the plaintiff's particular injury." *Gill v. Whitford*, 138 S. Ct. 1916, 1934 (2018). The problems caused by overbroad universal remedies are well catalogued and apply whether such a remedy takes the form of a nationwide injunction or universal vacatur. *See, e.g.*, *Labrador v. Poe*, 144 S. Ct. 921, 921–28 (2024) (Gorsuch, J., concurring); *Arizona v. Biden*, 40 F.4th 375, 395–98 (6th Cir. 2022) (Sutton, C.J., concurring).

Accordingly, if this Court is inclined to enter relief for the Plaintiffs it should enter a declaratory judgment or, if it finds that Plaintiffs have met their burden to warrant an injunction[1] under the *Winter* standard, enjoin the Department from enforcing the student organization

---

[1] Plaintiffs have not meaningfully attempted to address the standards for issuance of a permanent injunction, and Defendants do not concede that Plaintiffs have met or could meet that standard.

provisions against the individual plaintiff's university and other universities where the organizational plaintiff has chapters.

## CONCLUSION

For these reasons, Defendants respectfully request that the Court grant their motion for partial summary judgment and deny Plaintiffs' motion for partial summary judgment.


Dated: May 10, 2024                          Respectfully submitted,

                                             BRIAN M. BOYNTON
                                             Principal Deputy Assistant Attorney General

                                             CARLOTTA P. WELLS
                                             Assistant Branch Director

                                               */s/ Rachael L. Westmoreland*
                                             RACHAEL L. WESTMORELAND
                                             Trial Attorney (GA Bar No. 539498)
                                             U.S. Department of Justice
                                             Civil Division, Federal Programs Branch
                                             1100 L Street, NW
                                             Washington, D.C. 20005
                                             Tel: (202) 514-1280
                                             rachael.westmoreland@usdoj.gov