## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

———————————————————————

)

SECULAR STUDENT                          )
ALLIANCE, *et al.*,                       )
                                         )
              Plaintiffs,                )
                                         )
       v.                                )        Civil Action No. 21-0169 (ABJ)
                                         )
U.S. DEPARTMENT                          )
OF EDUCATION, *et al.*,                   )
                                         )
              Defendants.                )
———————————————————————)

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiffs Secular Student Alliance and Declan A. Galli brought this action against the U.S.
Department of Education ("Department of Education" or "Department") and the Secretary of the
Department of Education ("Secretary") to challenge what is referred to as the agency's "Free
Inquiry Rule" ("Rule").  *See* Compl. [Dkt. # 1].  According to the complaint, the Rule requires
colleges and universities that receive federal grant funding to exempt "religious student
organizations" from generally applicable nondiscrimination requirements that prevent university-
funded organizations from discriminating against students.  Compl. ¶ 3.  The complaint consists
of four claims:  (1) one count alleging ultra vires agency action;  (2) one count alleging agency
action in excess of statutory authority under the Administrative Procedure Act ("APA"),
5 U.S.C. § 706(2)(C), and; (3) two counts alleging agency action that is arbitrary, capricious, an
abuse of discretion, or otherwise not in accordance with law under the APA, 5 U.S.C. § 706(2)(A)
and (B).  Compl. ¶¶ 67–105.

Plaintiffs filed their complaint on January 19, 2021.  *See* Compl.  On February 23, 2021,
they moved for partial summary judgment on their first two claims that defendants acted in excess

of their statutory authority. Pls.' Mot. for Partial Summ. J. [Dkt. # 12] ("Pls.' Mot.") at 2.[1]

Defendants moved to stay briefing on plaintiff's motion pending the resolution of any motion to

dismiss or, alternatively, until 21 days after defendants' response to the complaint, which was due

on April 23, 2021.  Def.'s Mot. to Stay Briefing on Pls.' Mot. [Dkt. # 15] at 1.  On March 4, 2021,

the Court granted defendants' motion and held the briefing on plaintiff's motion in abeyance.

Minute Order (Mar. 4, 2021).

On April 20, 2021, before defendants filed a responsive pleading, the parties jointly moved

to stay the case to "allow [d]efendants to consider regulatory options that may obviate the need for

this litigation."  Joint Mot. to Stay [Dkt. # 21] at 1.  The Court granted the joint motion on April

21, 2021, and it ordered the parties to submit a joint status report every sixty days thereafter.

Minute Order (Apr. 21, 2021).

Three years and thirteen status reports later, on April 12, 2024, defendants filed a report

stating that the status of their rulemaking had "not changed substantially," and they proposed a

briefing schedule to enable them to respond to the complaint and the motion for summary

judgment.   Defs.' Second Suppl. to the Parties' Feb. 21, 2024 Joint Status Report [Dkt. # 42]

¶¶ 4–6.  On May 3, 2024, defendants answered the complaint, Answer [Dkt. # 43], and on May

10, 2024, they filed a combined cross-motion for summary judgment and opposition to plaintiffs'

motion.  Defs.' Combined Opp. to Pls.' Mot. and Mot. for Partial Summ. J. [Dkt. # 47] ("Defs.'

Opp. and Mot.").  The summary judgment motions are now fully briefed.  *See* Pls.' Combined

---

1    Plaintiffs did not move for summary judgment on their claims that the Rule is arbitrary,
capricious, or otherwise contrary to law because those claims "would require the administrative
record under Local Rule 7(n) and potentially also other discovery."  Pls.' Mot. at 12 n.6.

Mem. In Opp. to Defs.' Mot. and Reply to Defs.' Opp. to Pls.' Mot. [Dkt. # 51] ("Pls.' Opp. and Reply"); Defs.' Reply in Supp. of Defs.' Mot. [Dkt. # 54] ("Defs.' Reply").[2]

The Court lifted the stay of the case on October 3, 2024, *see* Minute Order (Oct. 3, 2024), and defendants' latest status report stated that they "do not anticipate publication of a final rule prior to the change in presidential administration on January 20, 2025." Defs.' Status Report [Dkt. # 56] ¶ 2.

For the reasons stated below, the Court will grant defendants' summary judgment motion and deny plaintiffs' summary judgment motion, as the agency had the broad statutory authority to promulgate the Rule. This opinion should not be read to express any view as to the wisdom of the Rule or whether it would survive scrutiny under the APA.

## BACKGROUND

### I.    Statutory Background

In 1979, Congress established the Department of Education to "ensure that education issues receive proper treatment at the Federal level" and to "coordinate [federal] education activities more effectively." 20 U.S.C. § 3402. It granted the Secretary of Education authority to supervise and direct the Department. 20 U.S.C. § 3411.

Among its functions, the Department of Education is tasked with administering the programs established by the Higher Education Act of 1965 ("HEA"), 20 U.S.C. § 1001 *et seq.* The

---

2    On February 18, 2021, Ratio Christi, Inc. ("Ratio Christi"), a "Christian apologetics ministry with student chapters at over a hundred college and university campuses," moved to intervene as a defendant in this lawsuit. Mot. to Intervene as Def. [Dkt. # 6] ("Mot. to Intervene") at 1. Both plaintiffs and defendants opposed the intervention, *see* Pls.' Opp. to Mot. to Intervene [Dkt. # 16]; Defs.' Mem. in Opp. to Mot. to Intervene [Dkt. # 18], but the Court has not yet ruled on Ratio Christi's motion. The Court did grant Ratio Christi leave to file an amicus brief in opposition to plaintiffs' motion of summary judgment, Minute Order (May 13, 2024), which it considered in this decision. *See* Proposed Intervenor-Def. Ratio Christi, Inc.'s Amicus Curiae Brief in Opp. to Pl.'s Mot. [Dkt. # 48].

HEA establishes an array of federal aid programs that assist students with financing their postsecondary education and provide federal support to postsecondary institutions of higher education. *See, e.g.*, 20 U.S.C. § 1070a (providing need-based grants to low-income students); 20 U.S.C. § 1057 (providing grants to eligible institutions).

At issue in this case is the scope of defendants' authority to administer the award of federal grant money to higher education institutions. The two primary sources of institutional support authorized by the HEA are Title III, 20 U.S.C. § 1051 *et seq.*, and Title V, 20 U.S.C. § 1101 *et seq. See* Cong. Rsch. Serv., R43351, The Higher Education Act (HEA): A Primer (updated Apr. 10, 2023) (explaining the provisions of the HEA). Title III provides grants and other financial support to institutions that serve high concentrations of racial and ethnic minority and/or low-income students. 20 U.S.C. § 1051(a)(6). Title V provides institutional support to "Hispanic-serving institutions." 20 U.S.C. § 1101(b), (c).

Under both Titles III and V, the Secretary of Education is directed to carry out programs to distribute federal grants to "eligible institutions." *See id.* § 1057(a) ("The Secretary shall carry out a program . . . to improve the academic quality, institutional management, and fiscal stability of eligible institutions . . . ."); *id.* 1101(c) ("The Secretary shall provide grants and related assistance" to eligible institutions serving "Hispanic students and other low-income individuals."). Each also authorizes the Secretary to "prescribe" the requirements institutions must meet to become "eligible" for federal grant money. *See id.* § 1058(b)(1)(E) (defining an "eligible institution" as one that "meets such other requirements as the Secretary may prescribe"); *id.* § 1101a(2)(A)(v) (same). The Department administers federal grant funding through "Direct Grant Programs," *see* 34 C.F.R. § 75.1, *et seq.*, and federally funded, State Administered Programs, *see* 34 C.F.R. § 76.1 *et seq.*

4

Separate from its functions under the HEA, the Secretary also has general rulemaking power under two provisions: 20 U.S.C. § 1221e-3 and 20 U.S.C. § 3474. Under section 1221e-3:

> The Secretary, in order to carry out functions otherwise vested in the Secretary by law or by delegation of authority pursuant to law, and subject to limitations as may be otherwise imposed by law, is authorized to make, promulgate, issue, rescind, and amend rules and regulations governing the manner of operation of, and governing the applicable programs administered by, the Department.

20 U.S.C. § 1221e-3. And section 3474 states, "The Secretary is authorized to prescribe such rules and regulations as the Secretary determines necessary or appropriate to administer and manage the functions of the Secretary or the Department." 20 U.S.C.A. § 3474.

## II.    Factual Background

On March 21, 2019, then-President Donald Trump signed Executive Order No. 13,864 (the "Order"), which was entitled "Improving Free Inquiry, Transparency, and Accountability at Colleges and Universities." Exec. Order No. 13,864, 84 Fed. Reg. 11401 (Mar. 26, 2019). The Order explained that "[i]t is the policy of the Federal Government to . . . encourage [higher education] institutions to foster environments that promote open, intellectually engaging, and diverse debate . . . through compliance with the First Amendment." *Id.* The Order then directed the Secretary of Education "take appropriate steps . . . to ensure [that] institutions that receive Federal research or education grants promote free inquiry . . . through compliance with all applicable Federal laws, regulations, and policies." 84 Fed. Reg. at 11402.

On January 17, 2020, the Department of Education issued a Notice of Proposed Rulemaking ("NPRM") proposing revisions to "current regulations" to fulfill the goals of the

Order.  85 Fed. Reg. 3190 (Jan. 17, 2020).[3]  It proposed amendments to 34 C.F.R. §§ 75.500 and

76.500 that required public and private institutions to comply with new "material condition[s]" to

receive "a Direct Grant" or state subgrant from the Department.  85 Fed. Reg. at 3191.   The new

conditions required institutions to:  (1) comply with the "First Amendment" and with "their stated

institutional policies on freedom of speech," and (2) "not deny . . . faith-based student

organization[s] any of the rights, benefits, or privileges . . . otherwise afforded to non-faith-based

student organizations."  85 Fed. Reg. at 3191.  The Department allowed the public to comment for

thirty days after issuing the NPRM.  85 Fed. Reg. at 3190.

On September 23, 2020, the Department issued its final Rule, which became effective on

November 23, 2020.  85 Fed. Reg. 59,916 (Sept. 23, 2020)[4]; Pls.' Statement of Undisputed

Material Facts [Dkt. # 12-1] ("Pls.' Statement") ¶¶ 1, 5.  The Rule adopted the material conditions

proposed in the NPRM as subsection to 34 C.F.R. §§ 75.500 and 76.500.  *See* 85 Fed. Reg. at

59,918, 59,979–80; Pls.' Statement ¶¶ 2–4.  The amended regulations now forbid recipients and

subrecipients of the Department's grant programs from:

> [D]eny[ing] to any student organization whose stated mission is religious in
> nature . . . any right, benefit, or privilege that is otherwise afforded to other
> student organizations . . . because of the religious student organization's
> beliefs, practices, policies, speech, membership standards, or leadership
> standards, which are informed by sincerely held religious beliefs.

---

[3]      The full title of the Department's NPRM is the "Uniform Administrative Requirements,
Cost Principles, and Audit Requirements for Federal Awards, Direct Grant Programs, State-
Administered Formula Grant Programs, Developing Hispanic-Serving Institutions Program, and
Strengthening Institutions Program."  85 Fed. Reg. 3190.

[4]      The full title of the final Rule is "Direct Grant Programs, State-Administered Formula
Grant Programs, Non-Discrimination on the Basis of Sex in Education Programs or Activities
Receiving Federal Financial Assistance, Developing Hispanic-Serving Institutions Program,
Strengthening Institutions Program, Strengthening Historically Black Colleges and Universities
Program, and Strengthening Historically Black Graduate Institutions Program."  85 Fed. Reg.
59,916.

34 C.F.R. §§ 75.500(d), 76.500(d).[5]  The Rule cited 20 U.S.C. § 1221e-3 and 20 U.S.C. § 3474 as the sources of the Department's authority to promulgate the new regulations.  85 Fed. Reg. at 59,943.

## STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).  To defeat summary judgment, the non-moving party must "designate specific facts showing that there is a genuine issue for trial."  *Id.* at 324 (internal quotation marks omitted).

---

5       While the "Free Inquiry" Rule is based on an Executive Order that speaks broadly about First Amendment rights, and it is cast in terms of not denying religious organizations rights guaranteed to others, plaintiffs allege that it authorizes religious organizations to deny others *their* right to be free from discrimination.  Compl. ¶ 7 ("[B]ecause of the new Rule, many public colleges and universities must now scrap the nondiscrimination requirements that they put in place to protect all students. These schools now have no real choice but to recognize and fund religious student organizations that discriminate . . . .").  Indeed, as defendants noted in their briefing, the agency issued another Notice of Proposed Rulemaking on February 22, 2023, seeking comment on rescinding the Rule because, in part, the Department "heard from stakeholders who raised concerns . . . that the Free Inquiry [R]ule could increase discrimination against marginalized students."  Defs.' Opp. and Mot. at 6; *see* 88 FR 10857-01, 10859 (Feb. 22, 2023) (stating that some faith-based and civil rights organizations "worried that [sections] 75.500(d) and 76.500(d) could be interpreted to require [institutions of higher education] to go beyond what the First Amendment mandates and allow religious student groups to discriminate against vulnerable and marginalized students").  These serious concerns are raised directly in the APA claims in Counts Three and Four, but since they have not yet been briefed, they are not addressed in this opinion.

"The rule governing cross-motions for summary judgment . . . is that neither party waives the right to a full trial on the merits by filing its own motion; each side concedes that no material facts are at issue only for the purposes of its own motion." *Sherwood v. Washington Post*, 871 F.2d 1144, 1148 n.4 (D.C. Cir. 1989), quoting *McKenzie v. Sawyer*, 684 F.2d 62, 68 n.3 (D.C. Cir. 1982). In assessing each party's motion, "[a]ll underlying facts and inferences are analyzed in the light most favorable to the non-moving party." *N.S. ex rel. Stein v. District of Columbia*, 709 F. Supp. 2d 57, 65 (D.D.C. 2010), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

## ANALYSIS

The claims at issue in the parties' cross-motions for summary judgment both depend on whether defendants exceeded their statutory authority in promulgating the Free Inquiry Rule. *See Fed. Express Corp. v. U.S. Dep't of Com.*, 39 F.4th 756, 764 (D.C. Cir. 2022) (analyzing "both the extent of the agency's delegated authority and whether the agency has acted within that authority" when "assessing an ultra vires claim") (internal quotations omitted); *Randolph-Sheppard Vendors of Am., Inc. v. Harris*, 628 F.2d 1364, 1366 (D.C. Cir. 1980) (stating that the court determines "whether the agency . . . was within the bounds of statutory authority" for a claim under 5 U.S.C. § 706(2)(C) of the APA).

The defendants point to two sources of the Secretary's authority to promulgate the Free Inquiry Rule: 20 U.S.C. § 1221e-3 and 20 U.S.C. § 3474. Consideration of the plain text of section 1221e-3 confirms that Congress gave the Secretary broad authority to carry out the functions vested in him "by law":

> The Secretary, in order to carry out functions otherwise vested in the Secretary by law or by delegation of authority pursuant to law, and subject to limitations as may be otherwise imposed by law, is authorized to make, promulgate, issue, rescind, and amend rules and regulations governing the

> manner of operation of, and governing the applicable programs administered by, the Department.

20 U.S.C. § 1221e-3.

Since the Department issued the Rule to carry out its statutory function of administering grant programs, and the Department was not subject to any legal provision limiting that authority, the Court finds that defendants had authority to promulgate the Free Inquiry Rule under section 1221e-3.  Therefore, the Court does not need to consider the scope of the Secretary's authority under section 3474.[6]

## I.    Defendants' rulemaking authority under 20 U.S.C. § 1221e-3.

To determine the extent of an agency's authority to promulgate rules, the court must look to "the powers Congress specifically granted [the agency] in light of the statutory language and background."  *See Nat'l Petroleum Refiners Ass'n v. F.T.C.*, 482 F.2d 672, 674 (D.C. Cir. 1973). An agency cannot "act with the force of law without delegated authority from Congress," *N.Y. Stock Exch. LLC v. S.E.C.*, 962 F.3d 541, 554 (D.C. Cir. 2020), so "[t]he question . . . is not what the [agency] thinks it should do but what Congress has said it can do."  *Nat'l Petroleum Refiners Ass'n*, 482 F.2d at 674 (internal quotations and citation omitted).  In assessing whether Congress granted the agency authority, "[a]s always, we must begin with the words of the statute creating the Commission and delineating its powers." *Id.*

The extent of the Department of Education's rulemaking power under sections 1221e-3 and 3474 has yet to be discussed in detail by any circuit court.  *See, e.g.*, *De La Mota v. U.S. Dep't*

---

6       Section 3474 is broadly worded, but it appears to be primarily focused on the development of rules for internal agency operations since it falls under Part B of subchapter IV, titled "general administrative provisions."  *See* 20 U.S.C. § 3474.

*of Educ.*, 412 F.3d 71, 80 (2d Cir. 2005) (stating simply that "Congress expressly delegated rule-making authority to the Secretary" through section 1221e-3).  So, the Court must begin with "[t]he most traditional tool" of statutory interpretation, which "of course, is to read the text."  *Eagle Pharms., Inc. v. Azar*, 952 F.3d 323, 330–31 (D.C. Cir. 2020) (internal citation and quotations omitted).  The Court "must presume that a legislature says in a statute what it means," *Conn. Nat'l. Bank v. Germain*, 503 U.S. 249, 253–54 (1992), and it must interpret statutory language, unless otherwise defined, "in accord with the ordinary public meaning of its terms at the time of its enactment."  *Bostock v. Clayton Cnty.*, 590 U.S. 644, 654 (2020).

Section 1221e-3 provides:

> The Secretary, in order to carry out functions otherwise vested in the Secretary by law or by delegation of authority pursuant to law, and subject to limitations as may be otherwise imposed by law, is authorized to make, promulgate, issue, rescind, and amend rules and regulations governing the manner of operation of, and governing the applicable programs administered by, the Department.

20 U.S.C. § 1221e-3.

The Court agrees with plaintiffs that, by its plain text, section 1221e-3 only authorizes the Department to promulgate rules with respect to functions that Congress assigned the Department to handle "through some other statute."  Pls.' Mot. at 15–16.  Section 1221e-3 does invest the Secretary of Education with the general power to "make, promulgate, issue, rescind, and amend rules and regulations."  20 U.S.C. § 1221e-3.  But the first clause of the provision makes clear that Congress granted that rulemaking power "in order to carry out functions otherwise vested in the Secretary by law or by delegation of authority pursuant to law."  *Id*.  And the end of the sentence confines the power to "rules and regulations governing . . . the applicable programs administered by[] the Department."  *Id*.  Thus, the Department's rulemaking authority under section 1221e-3 requires the existence of a "function[] otherwise vested . . . by law or by delegation of authority

pursuant to law," and the agency can only make "rules and regulations governing" the "applicable programs" it administers.  *Id*.  And, because the Secretary is "subject to limitations as may be otherwise imposed by law," the rule must conform to any additional directions or limits imposed on the Secretary by Congress.  *Id*.

Although defendants assert that "there is no requirement that every rule issued" under section 1221e-3 "be tied to a more specific delegation of authority," Defs.' Reply at 2, the cases they cite do not support that argument.  In *Association of Private Sector Colleges & Universities v. Duncan*, 110 F. Supp. 3d 176 (D.D.C. 2015), the plaintiff argued that the Department of Education acted outside its statutory authority under sections 1221e-3 and 3474 in promulgating regulations that required certain institutions to disclose information about their "gainful employment" programs to students.  *Id.* at 198.  Title IV of the Higher Education Act directed the Department that students at "proprietary institutions" or "postsecondary vocational institutions" could only receive federal funding if the institutions "prepare[d] students for gainful employment in a recognized occupation." *Id.* at 181, citing 20 U.S.C. § 1002(b),(c).

The court found that the Department had authority to promulgate the disclosure regulations because their purpose of providing access to information about "gainful employment" programs "surely advance[d] the purposes of both the Higher Education Act and Title IV (i.e., a statute and programs 'administered' and 'manage[d]' by the department)."  *Duncan*, 110 F. Supp. 3d at 199. Although the court noted that sections 1221e-3 and 3474 "fashion an awfully big umbrella" for rulemaking authority, it found that the disclosure regulations fell within that authority because they advanced a separate directive from Congress contained in the HEA.  *Id.* at 199.  In other words, the *Duncan* court implicitly recognized that the Department's rulemaking power under section 1221e-3 arose out of another statute that delegated it authority over a specific function.  *Id*.  The

other cases cited by defendants use similar language. *See Am. Fed'n of Teachers v. DeVos*, 484 F. Supp. 3d 731, 736 (N.D. Cal. 2020) ("The Secretary . . . has broad authority to prescribe any rules and regulations that she deems necessary or appropriate to *administer the HEA*.") (emphasis added); *United States ex rel. Mackillop v. Grand Canyon Educ., Inc.*, 626 F. Supp. 3d 418, 436 (D. Mass. 2022) ("The Secretary . . . is vested with the power to promulgate the regulations needed to administer [the Higher Education Act].").

## II.    Defendants had authority under 20 U.S.C. § 1221e-3 to promulgate the Free Inquiry Rule.

Now that the Court has defined the boundaries of the Secretary's rulemaking authority under section 1221e-3, it must determine whether the promulgation of the Free Inquiry Rule fell within that authority. *Colo. River Indian Tribes v. Nat'l Indian Gaming Comm'n*, 466 F.3d 134, 139 (D.C. Cir. 2006) ("An agency's general rulemaking authority does not mean that the specific rule the agency promulgates is a valid exercise of that authority.").

The first question is whether the Department promulgated the Free Inquiry Rule "to carry out functions otherwise vested . . . by law or by delegation of authority pursuant to law." 20 U.S.C. § 1221e-3. While plaintiffs maintain that defendants have never been vested with authority to enforce grant recipients' compliance with the First Amendment, Pls.' Mot. at 13, defining the issue in that narrow manner ignores the Secretary's general authority to administer grant funding under the HEA. Titles III and V both delegate the Secretary authority to administer federal grant money to certain "eligible institutions." 20 U.S.C. § 1057(a); 20 U.S.C. §§ 1101(c), 1101a(a)(2). And both Titles authorize the Secretary to prescribe the "requirements" that must be satisfied for institutions to become eligible. *See* 20 U.S.C. §§ 1057(b)(1), 1058(b)(1)(E) (stating that "the Secretary may award grants to any eligible institution" and defining "eligible institution" as one that "meets such other requirements as the Secretary may prescribe"); 20 U.S.C §§ 1101(c),

1101a(2)(A)(v) (same). The Free Inquiry Rule establishes a requirement that institutions must fulfill to receive federal grant money, and that falls well within the authority afforded to the Secretary by the HEA.

The second question to be decided is whether the Free Inquiry Rule governs the Secretary's "applicable programs." 20 U.S.C. § 1221e-3. Section 1221(c)(1) defines "applicable program" as "any program for which the Secretary or the Department has administrative responsibility as provided by law or by delegation of authority pursuant to law." 20 U.S.C. § 1221(c)(1). As discussed, the Secretary was delegated the responsibility to administer programs to distribute federal grant funding under the HEA. And the Free Inquiry Rule states that it applies to those "institutions of higher education . . . that receive Federal research or education grants from the Department." 85 Fed. Reg. 59916. Therefore, the Court finds that the Free Inquiry Rule governs the Secretary's "applicable programs."

The last question to be decided with respect to the claims that the agency exceeded its authority is whether the Free Inquiry Rule contravened any "limitations as may be otherwise imposed by law." 20 U.S.C. § 1221e-3. As both parties point out, there have been times when Congress has directed the Department to withhold federal funds for specific reasons. Pls.' Opp. and Reply at 4; Defs.' Reply at 4–5. For example, 20 U.S.C. § 1011i states that:

> [N]o institution of higher education shall be eligible to receive funds or any other form of financial assistance under any Federal program, including participation in any federally funded or guaranteed student loan program, unless the institution certifies to the Secretary that the institution has adopted and has implemented a program to prevent the use of illicit drugs and the abuse of alcohol by students.

*Id.* § 1011i(a). To promulgate a rule under section 1221e-3 governing federal funding, then, the Department would have to follow the limitations set by section 1011i.

In the present case, plaintiffs have taken the position that 20 U.S.C. § 1011a imposes a limitation on the Secretary's authority to promulgate the Free Inquiry Rule. Pls.' Resp. to Ct.'s Dec. 31, 2024 Minute Order [Dkt. # 60] ("Pls.' Resp. to Min. Order") at 1. Section 1011a states that:

> It is the sense of Congress that no student attending an institution of higher education . . . should, on the basis of participation in protected speech or protected association, be excluded from participation in, be denied the benefits of, or be subjected to discrimination or official sanction under any education program, activity, or division of the institution directly or indirectly receiving financial assistance under this Act . . . .

20 U.S.C. § 1011a(a).

Although this language in the HEA expresses clear disapproval of institutional discrimination against any student on the basis of protected speech or association, which is one of the alleged consequences of the Free Inquiry Rule, the Court cannot find that it constitutes a limitation imposed on the Department by law. First, section 1011a states that no student "should" be subjected to discrimination, which is ordinarily read as precatory, and not mandatory. *See Jolly v. Listerman*, 672 F.2d 935, 945 (D.C. Cir. 1982) ("[U]se of the word 'should' . . . detracts significantly from any claim that this guideline is more than merely precatory."). Second, the statute begins with "[i]t is the sense of Congress that" no student should be subject to discrimination. 20 U.S.C. § 1011a(a). That phrase also signals a suggestive guideline, rather than a mandatory limitation on the Department, especially when compared to section 1011i's explicit direction that "no institution of higher education *shall* be eligible to receive funds" unless they implement substance abuse prevention programs. *Compare* 20 U.S.C. § 1011a(a) *with* 20 U.S.C. § 1011i; *see also Emergency Coal. to Def. Educ. Travel v. U.S. Dep't of the Treasury*, 545 F.3d 4, 14 n.6 (D.C. Cir. 2008) (stating that the "sense of Congress" language in the Free Trade in Information Act was "not law"). Since plaintiffs have not identified any statute that

would curtail the agency's authority to promulgate the Free Inquiry Rule, the Court finds that defendant has stayed within its "limitations . . . imposed by law."  20 U.S.C. § 1221e-3.

Plaintiffs cite *Committee for Humane Legislation, Inc. v. Richardson*, 414 F. Supp. 297 (D.D.C. 1976) to argue that although section 1011a may be non-binding when standing alone, "it *is* binding when another mandatory provision incorporates the purpose or limitations set forth by the 'sense of Congress' provision."  Pls.' Resp. to Min. Order at 2 (emphasis in original).  Even if that is true, there is no such mandatory provision in the present case and the statutory language involved in *Richardson* demonstrates that difference.   In *Richardson*, the sense of Congress provision stated that " . . . it is the sense of the Congress that [marine mammals] should be protected and encouraged to develop," 16 U.S.C. § 1361, and the rulemaking provision explicitly directed the agency to prescribe "regulations . . . consistent with the purposes and policies set forth in [section 1361]."  16 U.S.C. § 1373; *Richardson*, 414 F. Supp. at 302.  Here, there is no language in Section 1221e-3 that directs the Secretary to consider the purposes or policies of section 1011a; it restricts the Secretary only by "limitations as may be otherwise imposed *by law*."  20 U.S.C. § 1221e-3 (emphasis added).

Thus, defendants have satisfied the requirements of their general rulemaking authority under section 1221e-3 in promulgating the Free Inquiry Rule.  Because the rule fell within the scope of the authority granted by that statute, the Court need not address whether the Secretary had authority under section 3474 as well.  Whether the Rule is arbitrary and capricious, an abuse of the agency discretion, or otherwise not in accordance with law is a question for another day.

## CONCLUSION

For the reasons stated above, defendants' partial summary judgment motion is **GRANTED** [Dkt. # 47], and plaintiffs' partial summary judgment motion is **DENIED** [Dkt. # 12].  Judgment is entered in defendants' favor on Counts I and II, and Counts III and IV remain to be decided.

AMY BERMAN JACKSON
United States District Judge

DATE:  January 15, 2025